Ray T. MYERS

v.

**UNITED STATES AUTOMOBILE CLUB, INC., an Indiana corporation, W. C. Bates, W. T. Bates, Roger Ward, Henry Banks, and Nord W. Krauskopf all individually and as Directors of the United States Automobile Club, Inc.**

**Civ. A. No. 6140.**

United States District Court
E. D. Tennessee, N. D.

Jan. 11, 1968.

James Erskine Brown, E. H. Rayson, Hugh W. Morgan, Kramer, Dye, Greenwood, Johnson & Rayson, Knoxville, Tenn,. for plaintiff.

John M. Kitchen, Rauch, Chase & Kitchen, Indianapolis, Ind., John A. Rowntree, Fowler, Rowntree, Fowler & Robertson, Knoxville, Tenn., for Henry Banks.

Wallace Burroughs, Knoxville, Tenn., for Bates, Bates & Ward.

John P. Davis, Hodges, Doughty & Carson, Knoxville, Tenn., for Krauskopf.

## MEMORANDUM

ROBERT L. TAYLOR, Chief Judge.

Ray T. Myers, a citizen of Sevier County, Tennessee, filed this action against defendants, United States Automobile Club, Inc., hereinafter referred to as Club, an Indiana corporation, now bankrupt, W. C. Bates, W. T. Bates, Roger Ward, Henry Banks, Nord W. Krauskopf, all individually and as directors of the United States Automobile Club, Inc.

Plaintiff seeks damages against defendants in the amount of $250,000.00 based on alleged misrepresentations made to him in relation to a Tennessee franchise granted to him by the Club. Among the false and fraudulent representations made by the defendants were: That the United States Automobile Club was superior to any other in the world; that they had the right to use the symbol of the United States Auto Club in the establishment and development of their franchises; that they were prepared to grant a perpetual franchise on that basis; that upon the purchase of a franchise "a complete, ready-to-go, profit package" to enable a franchise operator to secure members, would be furnished to plaintiff. The package was represented to include various types of insurance for club members, various forms to be utilized by members of local units in securing the insurance, and various advertising circulars to be used in the solicitation of members and in the solicitation of co-operating hotels, motels, gasoline station operators, automobile agencies, and the like.

Believing these representations to be true, plaintiff purchased a Tennessee franchise and paid therefor in excess of $13,000.00. The representations were made by defendants in publications of nationwide distribution and in individual conferences with the plaintiff held in Tennessee and Indiana. The contract was entered into in Blount County, Tennessee on November 3, 1964. After securing the franchise for the State of Tennessee, plaintiff extended his efforts to develop business at his own expense. He incurred considerable expense in opening an office.

Plaintiff charges that the representations were made pursuant to a conspiracy on the part of the defendants and were false. Defendants had not prepared the advertising circulars as they had represented and plaintiff was unable to pursue the proper development of his franchise. The insurance program, which was the income-producing part of the entire program, was not ready to go as defendants represented, and such program was not authorized for use in Tennessee by the Commissioner of Insurance and Banking of the State of Tennessee and the United States Automobile Club, Inc. and its franchise unit was not authorized to do

business as an automobile club in Tennessee. As a consequence, plaintiff was forced to close his office. In December, 1965, a part of the insurance program of the United States Automobile Club, Inc. was approved by the Tennessee Commissioner of Insurance and Banking. Plaintiff then sought to reopen the franchise office and recoup his losses, but within a short time thereafter, and specifically on January 11, 1966, he became aware that the right of the defendants to use the symbol of the United States Auto Club was not perpetual as they had represented to him but that pursuant to an agreement between the defendant, United States Automobile Club, Inc., and the United States Auto Club, use of the symbol was subject to cancellation on 10 days notice. The United States Auto Club cancelled the further use of the symbol by the United States Automobile Club, Inc. on March 31, 1966 and whatever opportunity existed for the recoupment of the plaintiff's losses were then and there totally destroyed.

Plaintiff says that although defendants are non-residents they are subject to the jurisdiction of this Court under Section 20–235 of the Tennessee Code Annotated, commonly referred to as the "long-arm" statute. This statute provides:

"20–235. *Jurisdiction of persons unavailable to personal service in state —Classes of actions to which applicable.*—Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:

"(a) The transaction of any business within the state;

"(b) Any tortious act or omission within this state;

"(c) The ownership or possession of any interest in property located within this state;

"(d) Entering into any contract of insurance, indemnity, or guaranty covering any person, property, or risk located within this state at the time of contracting; * * *."

Defendants, Banks and Krauskopf, have moved to quash the summonses and to set aside the services of process on the ground that the defendants have not been properly or sufficiently served since the defendants are individuals residing in Indiana and are not subject to service of process within the Eastern District of Tennessee under Rule 4(e) [1] and 4(f) [2] of the Federal Rules of Civil Procedure and as related to Sections 20–235 et seq., T.C.A.

[1]. *"(e) Same: Service upon Party Not Inhabitant of or Found Within State.* Whenever a statute of the United States or an order of court thereunder provides for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by the statute or order, or, if there is no provision therein prescribing the manner of service, in a manner stated in this rule. Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state, or (2) for service upon or notice to him to appear and respond or defend in an action by reason of the attachment or garnishment or similar seizure of his property located within the state, service may in either case be made under the circumstances and in the manner prescribed in the statute or rule. As amended Jan. 21, 1963, eff. July 1, 1963.

[2]. *"(f) Territorial Limits of Effective Service.* All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held, and, when authorized by a statute of the United States or by these rules, beyond the territorial limits of that state. In addition, persons who are brought in as parties pursuant to Rule 14, or as additional parties to a pending action or a counterclaim or cross-claim therein pursuant to Rule 19, may be served in the manner stated in paragraphs (1)–(6) of subdivision (d) of this rule at all places outside the state but

Each motion is supported by an affidavit of the movant. Although the affidavits follow the same general pattern, they are different in one material respect, to-wit: Banks says he was not a Director of the Club but was employed by it as its Director of Competition. Banks does not define "Director of Competition."

The effect of Banks' affidavit is that he has never transacted any business within the State of Tennessee nor committed any tortious act or tortious omission in the State of Tennessee, nor does he own any interest in any property in Tennessee, nor has he ever entered into any contract of any type in Tennessee or for services in Tennessee, either as an individual or as an alleged member of the Board of Directors of the Club, with plaintiff or anyone else. He says further that at no time has he participated in any way or capacity in the management or direction of any affairs or in the transaction of any business for or on behalf of the corporate defendant in Tennessee or elsewhere with the plaintiff, as an officer thereof or otherwise. He further states that he never held any individual conference with plaintiff in Tennessee or elsewhere or represented any matter affecting the plaintiff in publications or otherwise and that he has never met plaintiff or engaged in conversation with him by telephone or otherwise and has corresponded with him only on one occasion, namely, by letter respecting the construction of a race track (never built) dated October 5, 1965, a copy of which is attached to the affidavit. He further states that no person, firm or corporation has ever had his consent to represent any fact or occurrence on any subject whatsoever in any manner or by any medium whatsoever, whether by advertising, publication, or direct statement to the plaintiff, nor

has affiant Banks conspired to extend his consent to anyone so as to represent or misrepresent any matter to the plaintiff.

Krauskopf in his affidavit states that he does not engage in business in the State of Tennessee and does not have an agent for the service of process in Tennessee; that neither he nor any person acting in his behalf as his agent has committed any tortious act or tortious failure to act in Tennessee; that neither he nor any person acting as his agent entered into any contract with plaintiff, Ray T. Myers; that neither he nor any person acting as his agent transacted any business with the plaintiff in the State of Tennessee or elsewhere; that he did not participate in the active management of the Club and did not participate in any manner or form in the sale of franchises of said Club; that he has not received any compensation, dividends or any remuneration whatsoever from the Club; that he lives more than 100 miles from the offices of the Club; that he never corresponded with Myers or talked with him and is not personally acquainted with him; that he had no personal knowledge of any dealings with Myers pertaining to the sale of the Tennessee franchise and that he did not participate in any manner in the furtherance of a conspiracy to defraud Myers.

The affidavit of Ray T. Myers reflects that defendant Krauskopf participated in the sale of the Tennessee franchise to him and represented that the Club had the right to use the "famous USAC Shield" which would assure a profitable venture. Defendant W. C. Bates came to Tennessee and closed out the sale. Affiant learned that some of the Directors of the Club were acting as agents for insurance companies providing the insurance policies to be sold by the Club through its franchise holders as part of the individual memberships which affiant did not

within the United States that are not more than 100 miles from the place in which the action is commenced, or to which it is assigned or transferred for trial; and persons required to respond to an order of commitment for civil con-

tempt may be served at the same places. A subpoena may be served within the territorial limits provided in Rule 45. As amended Jan. 21, 1963, eff. July 1, 1963; Feb. 28, 1966, eff. July 1, 1966."

know at the time of the purchase of the franchise. Some of the insurance supplied was issued by agencies or companies owned and represented by Krauskopf.

James Erskine Brown, one of the attorneys for the defendant, stated in his affidavit that he had examined the books of the Club in the office of the attorney for the trustee in the bankruptcy proceeding of the Club and filed copies of a number of minute book entries of meetings of the Directors of the Club. These minutes show that defendants, Henry Banks and Nord W. Krauskopf, were elected Directors of the Club on September 15, 1964; that Banks and Krauskopf participated as Directors in the affairs of the Club, including action on insurance programs and action on franchise agreements between the Club and franchise holders; that Krauskopf represented at least one insurance interest, "Cross Country Corporation," which was the supplier of the insurance policies to be included in the Club's program; that Krauskopf and Banks executed, along with others, an application for a certificate of authority to operate an automobile club or association on behalf of the Club and filed the application with the Insurance Branch of the Department of Insurance and Banking of the State of Tennessee. The application stated that Krauskopf was presently Director of the Club and was presently with K & K Insurance Agency, Inc., Ft. Wayne, Indiana, and that Henry Banks was presently a Director of the Club and was also working in the capacity of Director of Competition for the Club. The application showed that the proposed business address of the Club was Alcoa Highway, P.O. Box 381, Alcoa, Tennessee.

■ The Court concludes that the activities of the defendants were substantially connected with the State of Tennessee and that the program in which the defendants participated allegedly caused plaintiff's injuries in Tennessee which are the basis of the present action.

At one point in one of the Directors' Meetings, defendant Krauskopf recommended that the Club qualify in each of the states in which it proposed to do business so that it would have access to the state courts in which it carried on business to enforce its contracts.

■ The Supreme Court has held that a litigant may recover damages for economic loss caused by misrepresentations from the person responsible for the misrepresentation. Ford Motor Company v. Lonon, Tenn., 398 S.W.2d 240 (1966); Restatement of Torts, Second Edition, Section 402B.

"It is not necessary that directors sought to be held liable personally should have made the alleged false representations in person; their approval or sanction is usually sufficient." Fletcher Cyclopedia Corporations, Vol. 3, Section 1150

The "long-arm" statute provides that:

"Corporate officers or agents are personally liable for those torts which they personally commit, or which they inspire or participate in, even though performed in the name of an artificial body." Fletcher Cyclopedia Corporations, Vol. 3, Section 1135

Persons include corporations under the Act. Section 20–235 T.C.A.

It is pointed out in the brief in behalf of Krauskopf that the "long-arm" statute became effective on March 2, 1965 while the transaction upon which the suit is based occurred on November 3, 1964 and that the Act would not cover the transaction. In support of this contention, it is argued that the Act is not retroactive but prospective only. Section 20–239 T.C.A.

■ The Act provides that it applies to all actions arising "hereafter or heretofore from past or future transactions." This language shows that the Act has both prospective and retroactive application and applies to the transaction under consideration. Shwab v. Doyle, 258 U.S. 529, 531, 42 S.Ct. 391, 66 L.Ed. 747;

United States v. Magnolia Petroleum Company, 276 U.S. 160, 48 S.Ct. 236, 72 L.Ed. 509.

Defendant Krauskopf says that he has serious reservations about the constitutionality of the Act if it is given retroactive application. In support of the reservation, Article 1, Section 20 of the Constitution of Tennessee is relied upon. This article is as follows:

"Sec. 20. *No retrospective laws.*— That no retrospective law, or law impairing the obligations of contracts, shall be made."

The contention that the Act is unconstitutional is lacking in merit. It does not change any of the substantive rights of the defendants. The Act is, therefore, remedial in character. Sec. 20–240. Its provisions have been construed by Tennessee District Judges on at least four occasions. See: Hamilton National Bank of Chattanooga v. Russell, 261 F. Supp. 145 (D.C.E.D.Tenn.S.D., 1966); Temco, Inc. v. General Screw Products, Inc., 261 F.Supp. 793 (D.C.M.D.Tenn., 1966); Southern Machine Company v. Mohasco Industries, Inc., 263 F.Supp. 164 (D.C.E.D.Tenn.S.D., 1967); Fayette v. Volkswagen, 273 F.Supp. 323 (D.C.W.D.Tenn.W.D., 1967).

The Supreme Court of the United States has pointed out that the boundary line between those activities which justify the subjection of non-residents to suit, and those which do not "cannot be simply mechanical or quantitative." The test is not merely whether the activity of the person or corporation, as procured through its agents in another state, "is a little more or a little less."

"* * * Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties,

or relations. * * *" International Shoe Co. v. State of Washington, etc., 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945).

To the extent that a corporation or individual exercises privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state and that the exercise of that privilege may give rise to obligations that arise out of activities within the state which may require the corporation or individual to respond to a suit brought to enforce that obligation. International Shoe Co. v. State of Washington, etc., supra.

Another case that has some relevancy to our problem is that of McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). In that case, petitioner's son, a resident of California, bought a life insurance policy from an Arizona corporation naming petitioner as beneficiary. Later respondent, a Texas corporation, agreed to assume the insurance obligations of the Arizona corporation and mailed a reinsurance certificate to petitioner's son in California, offering to insure him in accordance with his policy. He accepted the offer and paid premiums by mail from California to the home office of the insurance company in Texas. The insurance company did not have an office or agent in California and did not do business in that state. Petitioner sent proof of the death of her son to the insurance company, but it refused to pay the claim. California statutes subject foreign corporations to suit in California on insurance contracts with residents of California. Petitioner sued the insurance company in California and recovered. One of the defenses of the insurance company was that it was not subject to the jurisdiction of the California courts. The court stated that since Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, it has been recognized that the due process clause of the Fourteenth Amendment places some limit on the power of state courts to enter binding judgments against persons not served

with process within their boundaries. But where the line of limitation falls has been the subject of much controversy.

"* * * In a continuing process of evolution this Court accepted and then abandoned 'consent,' 'doing business,' and 'presence' as the standard for measuring the extent of state judicial power over such corporations. * * * More recently in International Shoe Co. v. Washington, 326 U.S. 310 [66 S.Ct. 154, 90 L.Ed. 95], the Court decided that 'due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" 355 U.S. p. 222, 78 S.Ct. p. 200.

Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) involved a contest between beneficiaries to a trust fund in which the Delaware Trust Company was made trustee of certain securities. The trust was made by a testator domiciled in Pennsylvania. Later she moved to Florida. The Florida Court held that under the Florida law the $400,000.00 Delaware trust fund passed under the residuary clause of the will. A Delaware Court with personal jurisdiction over the Trust Company sustained the trust and inter vivos appointment and held that the parties designated therein were entitled to the $400,000.00. The decision was sustained by the Supreme Court of Delaware. The Florida State Court decision was sustained by the Supreme Court of Florida, Hanson v. Denckla, Fla., 100 So.2d 378. The Supreme Court of the United States held that the Florida court did not have jurisdiction over the Delaware trust since the trustee was not a resident of Florida and all the trust funds were located in Delaware. In the course of the opinion, the Court observed:

"* * * In response to these changes, the requirements for personal jurisdiction over nonresidents have evolved from the rigid rule of Pennoyer v. Neff, 95 U.S. 714 [24 L.Ed. 565], to the flexible standard of International Shoe Co. v. Washington, 326 U.S. 310 [66 S.Ct. 154, 90 L.Ed. 95]. But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. See Vanderbilt v. Vanderbilt, 354 U.S. 416, 418 [77 S.Ct. 1360, 1362, 1 L.Ed.2d 1456]. Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him. See International Shoe Co. v. Washington, 326 U.S. 310, 319 [66 S.Ct. 154, 159, 90 L.Ed. 95]." 357 U.S. p. 251, 78 S.Ct. p. 1238.

For the reasons heretofore indicated, the motions to quash the summonses and dismiss the case are overruled.