Gradus DeCOOK et al., Appellants,

v.

ENVIRONMENTAL SECURITY CORPO-
RATION, INC., et al., Appellees.

Kenneth W. GETHMANN et
al., Appellants,

v.

ENVIRONMENTAL SECURITY CORPO-
RATION, INC., et al., Appellees.

Nos. 2–58325, 2–58326.

Supreme Court of Iowa.

Oct. 19, 1977.

Patrick W. Brick and Robert B. Scism of Scalise, Scism, Gentry, Brick & Brick, Des Moines, for appellants.

Joel D. Novak of Herrick, Langdon, Belin, Harris, Langdon & Helmick, Des Moines, for appellees John C. Thornton and Kenneth E. Hazeldine.

Louis A. Lavorato of Williams, Hart, Lavorato & Kirtley, West Des Moines, for appellees Environmental Security Corp., Inc., Design Research Corp., William Spencer and R. Drew McNamara.

Clarence Cosson of Cosson, Christianson, Hohnbaum & George, Des Moines, for appellees Environmental Securities Co. of Ill. and Russell T. Stelle.

Heard by MOORE, C. J., and RAWLINGS, LeGRAND, REYNOLDSON and McCORMICK, JJ.

RAWLINGS, Justice.

Plaintiffs take permissive appeal from trial court's order sustaining special appearances of one foreign corporation and three nonresident directors of an Iowa corporation, all served with process under Section 617.3, The Code 1975. We affirm in part, reverse in part.

Involved here are two causes of action, apparently consolidated for appellate review, one brought by Gradus DeCook and 27 co-plaintiffs, the other by Kenneth W. Gethmann and four co-plaintiffs, upon petitions filed September 16, 1974, and October 16, 1974, respectively. The nine named defendants include two domestic corporations, an Illinois corporation, two individual resident corporate directors, and four individual nonresident corporate directors.

Defendant, Environmental Security Corporation, Inc. (Environmental of Iowa), is a local corporate entity with its principal place of business in Des Moines. Defendants, Stelle, Thornton and Hazeldine, are alleged to have been directors of Environmental of Iowa at all times material hereto. They are also assertedly directors of defendant, Environmental Securities Company of Illinois (Environmental of Illinois), an Illinois corporation. The three above named individuals, Environmental of Iowa directors, are residents of Indiana.

May 25, 1972, an Environmental of Iowa board of directors special meeting was held in Chicago, Illinois. The directors (including Stelle, Thornton and Hazeldine) then unanimously voted to authorize the sale of Environmental of Iowa stock in this state "in accordance with the blue sky laws of the state of Iowa." It was further resolved the defendants, Spencer and McNamara, also directors of Environmental of Iowa and residents of this state, serve as agents for the corporation in supervising the sale of such stock.

Each plaintiff purchased Environmental of Iowa stock. They now allege the securities were not properly registered, therefore sold in violation of Chapter 502, The Code 1975. In Count I of their petitions, they seek rescission of the sale pursuant to Code § 502.23 with return of purchase price paid.

By Count II, plaintiffs assert that on November 24, 1972, defendants McNamara and Stelle converted $100,000 from the assets of Environmental of Iowa to the account of Design Research Corporation, another Iowa corporate entity with its principal place of business in Des Moines. McNamara and Stelle are assertedly the sole directors, officers and owners of Design Research. It is alleged this conversion was effected willfully and maliciously.

Finally, in Count III, plaintiffs aver defendants Thornton, Stelle, Hazeldine and Kelly conspired and consorted to further convert these assets by issuing a certificate of deposit to the company now known as Environmental of Illinois, apparently using the $100,000 previously deposited in the Design Research account. Plaintiffs further state defendants McNamara, Thornton, Stelle, Kelly, Spencer and Hazeldine, members of Environmental of Iowa board of directors, converted an additional $40,000 of that company's assets to their own use or for the benefit of Environmental of Illinois or Design Research.

November 14, 1974, special appearances were filed by defendants Thornton and Hazeldine. They were sustained in both the Gethmann and DeCook actions. December 18, 1974, special appearances were filed by defendants Stelle and Environmental of Illinois. These too were sustained.

December 27, 1974, plaintiffs moved for reconsideration of the order upholding the special appearances by defendants Thornton and Hazeldine. Resistances to all special appearances were also filed, stating (1) defendants Thornton and Hazeldine were members of the Environmental of Iowa board of directors; (2) records in the office of the Secretary of State verify defendants Thornton, Hazeldine and Stelle actively authorized the sale of securities within this state; (3) these three defendants also served as Environmental of Illinois directors and as such authorized the Iowa corporation to serve as their agent in attempting to raise funds in this state for use and benefit of the Illinois company; (4) defendants McNamara and Stelle were agents of the Illinois corporation when they misappropriated funds from the Des Moines bank; and (5) the Illinois corporation, in arranging for a transfer of funds from said bank to the Illinois account, was doing business with an Iowa resident within the state as contemplated by the long-arm statute, § 617.3. Counsel for plaintiffs also submitted an affidavit setting forth many material facts.

Thornton, Hazeldine and Stelle (defendants) filed affidavits in support of their special appearances. Thornton and Hazeldine thereby stated nothing more than that they had, at all relevant times, been residents of Indiana "and have in no way transacted business of any kind or nature or made any contract in the State of Iowa". Stelle likewise related only that he was a resident of Indiana, had not been in Iowa since prior to 1972, never transacted any business or done any act in Iowa, and had made no contracts in this state.

January 17, 1975, a hearing was held on the above noted four special appearances. These proceedings were not carried of record. In sustaining these special appearances, trial court merely stated:

"Plaintiffs allege that the acts of these defendants, upon which the cause of action is based, occurred in 1972 and 1973.

"The pleadings and affidavits establish the facts that the individual defendants have not been in Iowa since prior to 1972.

"It is the plaintiffs' position that since the individual defendants were members of the Board of Directors of the Corporation that the individuals are liable in tort.

"To summarize, after consideration of the record and the briefs submitted, this court finds there has been no substantial connection by either of the defendants with the State of Iowa, and no contact which justifies Iowa courts rendering personal judgment against them."

May 21, 1975, plaintiffs filed applications for leave to appeal. June 4, 1975, this court granted the request.

■ I. Before considering the merits of the present controversy we note two procedural problems presented on this appeal. First, no consolidation order is found in the record. It appears, however, all parties acquiesced therein below. Accordingly, this appeal is entertained on the premise that the actions were, without objection, tried as though consolidated. In any event, there is no apparent basis upon which to find defendants would be prejudiced by consolidation of the cases for appellate review.

Second, plaintiffs present no argument to the effect trial court erred in sustaining the special appearance of Environmental of Illinois. In fact, they ask only that the ruling on special appearances of Thornton, Hazeldine and Stelle be reversed. Therefore, the assignment as to Environmental of Illinois is deemed waived. *McCleeary v. Wirtz,* 222 N.W.2d 409, 415 (Iowa 1974).

Plaintiffs contend, however, the three above named Environmental of Iowa nonresident directors are subject to *in personam* jurisdiction of our courts pursuant to § 617.3, quoted later. They also maintain trial court erred in concluding service upon these defendants under the cited long-arm statute would not comport with due process.

On the other hand, defendants here argue (1) plaintiffs have not complied with the procedural requisites in Code § 617.3; (2) they failed to prepare a record which will permit a proper review of trial court's ruling; (3) they failed to sustain their burden of establishing facts which would warrant the invocation of statutory jurisdiction; and (4) the exercise of *in personam* jurisdiction under the established facts would not satisfy due process of law requirements.

II. We first entertain defendants' contention as to absence of compliance with procedural requisites established by Code § 617.3. See *Powers v. Iowa Harvestore Systems, Inc.,* 204 N.W.2d 623, 624–625 (Iowa 1973). Specifically, defendants urge plaintiffs have failed to effect proper proof of service. See generally *Boyer v. Broadwater,* 168 N.W.2d 799, 801–802 (Iowa 1969).

It is conceded, however, this issue was never presented to the court below. Therefore, it cannot be here raised for the first time. *Wiles v. Myerly,* 210 N.W.2d 619, 624 (Iowa 1973); *Volkswagen Iowa City, Inc. v. Scott's Incorporated,* 165 N.W.2d 789, 794–795 (Iowa 1969). See also *Baker v. Beal,* 225 N.W.2d 106, 113–114 (Iowa 1975). And we have specifically held that where no defect or omission in effecting process upon a defendant under Code

§ 617.3 was ever called to attention of the trial court, such contention will not be considered by us on appeal. *Tice v. Wilmington Chemical Corp.,* 259 Iowa 27, 34–35, 141 N.W.2d 616, 621 (1966). This is instantly dispositive.

III. Defendants also contend trial court's adjudication should not be reversed because plaintiffs have failed to submit on appeal all evidence upon which that adjudication was effected. Specifically, defendants note the hearing on these special appearances was not reported. It also appears plaintiffs never invoked the special provisions of Iowa R.Civ.P. 340(c). Defendants conclude that because plaintiffs have failed to preserve and here present an adequate record, the ruling below must be affirmed.

But the mere fact that all evidence is not included in the appendix does not prevent this court from exercising appellate review to the extent permitted by the record. See Iowa R.Civ.P. 340(a).

And, as articulated in *Tice, supra,* 259 Iowa at 34, 141 N.W.2d at 621:

"A special appearance has for its purpose the interposing of objection to jurisdiction, such being the sole question placed before the court by such a restricted appearance. Rules 66 and 104(a), R.C.P.; 6 C.J.S. Appearances § 22b, page 66; and 5 Am.Jur.2d, Appearance, section 3, page 480.

"In passing upon a special appearance the courts of this state accept the allegations of plaintiff's petition as true. *Great Atlantic & Pacific Tea Co. v. Hill-Dodge Banking Co.,* supra, 255 Iowa 272 at 279, 122 N.W.2d 337 at 341.

"However, we have also held verified affidavits may be submitted supporting or in opposition to a special appearance. Rules 80(b) and 116, R.C.P.; *State v. Bitter Root Valley Irr. Co.,* 185 Iowa 60, 66, 169 N.W. 776; and 2 Iowa Law Bulletin 127. And, when affidavits are so filed the contents stand as a verity unless controverted. *Stites v. Des Moines Transit Co.,* 249 Iowa 185, 190, 85 N.W.2d 905,

and *National Clay Products Co. v. District Court*, 214 Iowa 960, 970, 243 N.W. 727."

See also *Resthaven Cem. Ass'n v. Bd. of Rev. of Polk Cty.*, 249 N.W.2d 618, 621 (Iowa 1977).

Further in this vein, the hearing on a special appearance is a special proceeding, not reviewable de novo, and fact findings by the trial court are binding upon us if supported by substantial evidence. Of course, we are not bound by the trial court's conclusions of law or by its application of legal principles. *NFO Members', etc. v. Beneficiaries, etc.*, 255 N.W.2d 162, 164 (Iowa 1977); *Norton v. Local Loan*, 251 N.W.2d 520, 521 (Iowa 1977).

Also, where the record affirmatively reveals certain facts exist which would, as a matter of law, make the judgment entered erroneous then courts will accordingly exercise appellate review. See 4 Am. Jur.2d, Appeal and Error, § 525; 4A C.J.S. Appeal and Error § 1154.

Apparently there is no actual dispute concerning trial court's extremely limited findings of fact, if any there be. Defendants do not contend evidence adduced at the hearing below contradicted or amplified any of the facts presented by the pleadings and affidavits which were filed below and are now before us. So, in essence, the problems posed focus upon trial court's conclusions of law from facts, not legal conclusions, set forth in the pleadings and affidavits contained in the record at hand. Further in this regard, the factual situation articulated in plaintiffs' petitions and affidavits is in no manner controverted by defendants' affidavits. As these cases come to us we therefore accept plaintiffs' statements of fact as true.

IV. Mindful of the foregoing, our task is to determine whether these nonresident directors of an Iowa corporation are presently amenable to process under Code § 617.3, quoted *infra*. In considering this jurisdictional issue, two questions are involved. First, whether the conduct of said defendants comes within the purview of the statute; second, assuming statutory requirements are satisfied, whether application of the statutory enactment to the particular circumstances of the case complies with constitutional due process of law standards. See *Caesar's World, Inc. v. Spencer Foods, Inc.*, 498 F.2d 1176, 1178–1182 (8th Cir. 1974). See generally *Creative Commun. Consult. v. Byers Transp.*, 229 N.W.2d 266, 267–268 (Iowa 1975); *Edmundson v. Miley Trailer Co.*, 211 N.W.2d 269, 271–272 (Iowa 1973).

The relevant portions of § 617.3 provide: "If a nonresident person makes a contract with a resident of Iowa to be performed in whole or in part by either party in Iowa, or if such person commits a tort in whole or in part in Iowa against a resident of Iowa, such acts shall be deemed to be doing business in Iowa by such person for the purpose of service of process or original notice on such person under this section, and shall be deemed to constitute the appointment of the secretary of state of the state of Iowa to be the true and lawful attorney of such person upon whom may be served all lawful process or original notice in actions or proceedings arising from or growing out of such contract or tort. * * * The making of the contract or the committing of the tort shall be deemed to be the agreement of such corporation or such person that any process or original notice so served shall be of the same legal force and effect as if served personally upon such defendant within the state of Iowa. The term 'resident of Iowa' shall include * * * any individual residing in Iowa * * *."

As best determinable, plaintiffs are all residents of Iowa. They allege these nonresident directors (Thornton, Hazeldine and Stelle) conspired and consorted to authorize the issuance of stock by an Iowa corporation, then joined in causing the funds from such sales to be converted to their own use or that of other defendants, corporate or individual. It is apparent these allegations assert the above named nonresident defendants committed a tort

which, although initiated outside the boundaries of this state, produced injury to plaintiffs residing within the state. We hold these allegations sufficed to facially bring plaintiffs within the purview of § 617.3. See Restatement, Second, Conflict of Laws, § 37.

V. Unquestionably due process considerations for assertion of personal jurisdiction over nonresidents require minimum contact with the forum state by a defendant sufficient to satisfy traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Of course, unilateral acts by plaintiff alone will not suffice to bring defendant within the personal jurisdiction of the forum state. *Hanson v. Denckla*, 357 U.S. 235, 250–254, 78 S.Ct. 1228, 1238–1240, 2 L.Ed.2d 1283 (1958). We have considered the impact of these cited cases on numerous occasions. See *Douglas Machine & Engineering Co., Inc. v. Hyflow Blanking Press Corporation*, 229 N.W.2d 784, 789 (Iowa 1975); *Creative Commun. Consult. v. Byers Transp.*, 229 N.W.2d at 268; *Edmundson v. Miley Trailer Co.*, 211 N.W.2d at 272; *Rath Packing Co. v. Intercontinental Meat Traders, Inc.*, 181 N.W.2d 184, 187–188 (Iowa 1970); *Miller v. Vitalife Corporation of America*, 173 N.W.2d 91, 94 (Iowa 1969); *Tice v. Wilmington Chemical Corp.*, 259 Iowa at 39–41, 141 N.W.2d 616. See generally Comment, The Iowa "Long-Arm" Statute—Ten Years After, 23 Drake L.Rev. 423 (1974); Annots., 24 A.L.R.3d 532, 23 A.L.R.3d 551, 20 A.L.R.3d 1201.

Defendants assert the corporate cloak should insulate these named individual directors from an Iowa court's personal jurisdiction. They rely on those cases stating the general rule that personal jurisdiction over nonresident individual officers, agents or employees of a foreign corporation cannot be predicated merely upon jurisdiction over the corporation itself. See e. g., *Weller v. Cromwell Oil Company*, 504 F.2d 927, 929 (6th Cir. 1974); *Wilshire Oil Company of Texas v. Riffe*, 409 F.2d 1277, 1281, n. 8 (10th Cir. 1969); *Idaho Potato Com'n v.*

*Washington Potato Com'n*, 410 F.Supp. 171, 180–181 (D.Idaho 1975); *Miller v. American Telephone & Telegraph Company*, 394 F.Supp. 58, 62–63 (E.D.Pa.1975); *Lehigh Valley Industries, Inc. v. Birenbaum*, 389 F.Supp. 798, 803–804 (S.D.N.Y.1975); *Path Instruments International Corp. v. Asahi Optical Co.*, 312 F.Supp. 805, 810 (S.D.N.Y. 1970); *Willner v. Thompson*, 285 F.Supp. 394, 397 (E.D.N.Y.1968). See generally Wright & Miller, Federal Practice and Procedure, Civil § 1069, at 31 (Supp.1977); 3A Fletcher, Cyclopedia of Corporations, § 1296.1.

Noticeably, these cases focus upon the distinction between corporate affairs conducted by an officer and business conducted by an officer of a corporation in his own behalf. See e. g., *Miller v. American Telephone & Telegraph Company; Lehigh Valley Industries, Inc. v. Birenbaum*; and *Willner v. Thompson*, all cited above. See also *Security Bank, N.A. v. Tauber*, 347 F.Supp. 511, 516 (D.D.C.1972); *Fashion Two Twenty, Inc. v. Steinberg*, 339 F.Supp. 836, 842 (E.D.N.Y.1971); *Unicon Management Corp. v. Koppers Company*, 250 F.Supp. 850, 853 (S.D.N.Y.1966); *Yardis Corp. v. Cirami*, 76 Misc.2d 793, 351 N.Y.S.2d 586 (1974).

In light of all the facts here involved, we are persuaded the foregoing corporate cloak cases are not apropos.

More closely on point is *Ellwein v. Sun-Rise, Inc.*, 295 Minn. 109, 203 N.W.2d 403 (1972). That case involved a shareholder's derivative action against some nonresident directors of the corporation, and the court concluded, 203 N.W.2d at 405:

"The defendants as nonresident directors of the defendant corporation are in a position to direct, manage, and control the manner in which the defendant Minnesota corporation does business within this state. This suit is brought because of the alleged conduct of the nonresident directors acting as directors. While most, if not all, their directors' meetings were held in a number of other states, the home office of the corporation was in Minnesota and this state was the focal point for all communications. If

the contention of defendants were to be adopted by this court, it is doubtful that there would be sufficient contacts by all of the defendants in any one state other than Minnesota on which to base jurisdiction under long-arm statutes. The convenience of the parties and judicial economy dictate that we should provide a forum for this lawsuit in Minnesota."

It is not necessary, however, for us to decide whether the fact that defendants are directors of an Iowa corporation is per se sufficient to subject them to the jurisdiction of our courts. The allegations of the instant petitions and affidavits go beyond mere directorship in an Iowa based corporation. Rather, it is alleged these specially appearing parties caused tortious injury to corporate shareholders in this state by (1) authorizing the sale of securities in Iowa, then (2) aiding in converting resultant revenues to their own benefit or other self-serving uses. All this militates against application of the above stated general rule dealing with *in personam* jurisdiction over corporate directors. In other words, the present situation is such that due process of law will not be denied by requiring these individual directors to defend in the instant Iowa actions. See *Miller v. Vitalife Corporation of America*, 173 N.W.2d at 95 [President of foreign corporation held subject to court's jurisdiction where plaintiff's allegations asserted, inter alia, a conspiracy between the president and the corporation along with an allegation that the president induced the corporation to break its contract with plaintiff]; *Topik v. Catalyst Research Corporation*, 339 F.Supp. 1102, 1107 (D.Md.1972) [Nonresident directors of Maryland corporation held subject to state long-arm statute in shareholder derivative suit despite fact that board meetings were not held in Maryland]. See also *Getter v. R. G. Dickinson & Co.*, 366 F.Supp. 559, 568 (S.D.Iowa 1973); *Myers v. United States Automobile Club, Inc.*, 281 F.Supp. 48, 52 (E.D.Tenn.1968); *Dixon v. Northwestern Nat. Bank of Minneapolis*, 275 F.Supp. 582, 584 (D.Minn.1967); *Maternity Trousseau, Inc. v. Maternity Mart of Baltimore*, 196 F.Supp. 456, 457–458 (D.Md.1961); *Handley*

*v. Franchise Marketing Services, Inc.*, 9 Wash.App. 40, 510 P.2d 673 (1973); *Indian Lake Club v. Hainsworth*, 212 So.2d 915, 916 (Fla.App.1968).

Additionally, this court has held a state has power to permit exercise of jurisdiction over an individual who causes effects in Iowa by an act done elsewhere with respect to any cause of action arising from such effects unless the nature thereof and the individual's relationship to the state make exercise of such jurisdiction unreasonable. *Norton v. Local Loan*, 251 N.W.2d at 521. See also *Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326, 1340 (2d Cir. 1972); Restatement, Second, Conflict of Laws, § 37, comment (a), at 156–157.

Admittedly the person sought to be charged must know or have good reason to know his conduct will have effects in the state seeking to assert jurisdiction over him. *Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d at 1341; Restatement, Second, Conflict of Laws, § 37, comment (a), at 157.

Without doubt these defendants could have reasonably foreseen their asserted tortious activities would have a significant impact in the state of Iowa. In a broad sense it is asserted they conspired to deplete assets of the Iowa corporation. Certainly such actions, if substantiated, would be known to adversely affect shareholders residing in this state.

We cannot say the exercise of Iowa court jurisdiction, under existing circumstances, would be "unreasonable".

VI. Another factor to be considered in here deciding the constitutional reach of our long-arm statute is the state's interest in these causes of action. *Block Industries v. DHJ Industries, Inc.*, 495 F.2d 256, 259 (8th Cir. 1974); *Holfield v. Power Chemical Company, Inc.*, 382 F.Supp. 388, 394 (D.Md.1974). Clearly in the present actions, brought by Iowa shareholders for wrongful stock sales and conversion allegedly caused to be committed by nonresident directors of an Iowa corporation, the

state of Iowa has a strong interest. Surely its concern in protecting resident shareholders, damaged by the sale of securities in violation of our blue sky laws and attendant conversion, is not subject to question. See *Davidson v. Henry L. Doherty & Co.*, 214 Iowa 739, 241 N.W. 700 (1932). See also *Goodman v. Doherty & Co.*, 218 Iowa 529, 255 N.W. 667 (1934), aff'd sub nom., *Henry L. Doherty & Co. v. Goodman*, 294 U.S. 623, 55 S.Ct. 553, 79 L.Ed. 1097 (1935); Restatement, Second, Conflict of Laws, § 36, comment (c), at 148.

VII. Pursuing the subject one more step, we note *Shaffer v. Heitner*, —— U.S. ——, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). Although this case is factually distinguishable, involving a variant issue as to in rem jurisdiction over a nonresident corporation, the Court did say, —— U.S. at ——, 97 S.Ct. at 2579–2580, 53 L.Ed.2d at 697:

"The question in *International Shoe* [326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)] was whether the corporation was subject to the judicial and taxing jurisdiction of Washington. Chief Justice Stone's opinion for the Court began its analysis of that question by noting that the historical basis of in personam jurisdiction was a court's power over the defendant's person. That power however, was no longer the central concern:

"'But now that the *capias ad respondendum* has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278.' 326 U.S., at 316, 66 S.Ct., at 158.

"Thus, the inquiry into the State's jurisdiction over a foreign corporation appropriately focused not on whether the corporation was 'present' but on whether there have been

"'such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there.' *Id.*, at 317, 66 S.Ct., at 158.

"Mechanical or quantitative evaluations of the defendant's activities in the forum could not resolve the question of reasonableness:

"'Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations.' *Id.*, at 319, 66 S.Ct., at 160.

"Thus, the relationship among the defendant, the forum and the litigation, rather than the mutually exclusive sovereignty of the States on which the rules of *Pennoyer* [95 U.S. 714, 24 L.Ed. 565 (1877)] rest, became the central concern of the inquiry into personal jurisdiction. The immediate effect of this departure from *Pennoyer's* conceptual apparatus was to increase the ability of the state courts to obtain personal jurisdiction over nonresident defendants. (Citations.)"

VIII. Briefly stated, this is the underlying factual situation portrayed by the pleadings and affidavits on file. Thornton, Hazeldine and Stelle, acting behind a corporate veil, nonetheless individually with others similarly situated, did place in motion a schematic sale of Environmental of Iowa stock within and to unsuspecting residents of this state by which the purchasers were ultimately defrauded, thus damaged. As aptly stated in *Jonas v. State*, 19 Wis.2d 638, 121 N.W.2d 235, 238–239 (1963):

"A corporation is treated as an entity separate from its stockholder or stockholders under all ordinary circumstances. Although courts have made exceptions

under some circumstances, this has been done where applying the corporate fiction 'would accomplish some fraudulent purpose, operate as a constructive fraud, or defeat some strong equitable claim * * *.' "

See also *Inn Operations, Inc. v. River Hills etc. Co.*, 261 Iowa 72, 84–85, 152 N.W.2d 808, 815–816 (1967). See generally 18 Am. Jur.2d, Corporations, §§ 14–15; 19 C.J.S. Corporations §§ 845, 849(a), 850; Restatement, Second, Conflict of Laws, §§ 35–37. Here, but for the initiating acts and subsequent conduct of said individual defendants, the resultant fraud perpetrated within the state of Iowa would not have occurred. Moreover, because of the attendant alleged conversion of funds derived from such sale of stock to Iowa residents it would logically follow defendants facially initiated and profited by a chain of wrongful business activities within the boundaries of this state. See *Tice v. Wilmington Chemical Corp.*, 259 Iowa at 44, 141 N.W.2d at 627. See also *Midland Forge, Inc. v. Letts Industries, Inc.*, 395 F.Supp. 506, 513 (N.D.Iowa 1975).

Understandably, we do not presume to determine whether plaintiffs' evidence will support any of the allegations set forth in their pleadings and affidavits. These can only be resolved according to evidence adduced on trial.

Taking plaintiffs' pleading and affidavit allegations of fact as true for purpose of the moment, we find the relationship of these defendants to the state of Iowa makes *in personam* jurisdiction of our courts reasonable, i. e., offends no "traditional notions of fair play and substantial justice."

IX. Although Iowa, unlike some states, has never enacted a statute by which acceptance of an Iowa corporate directorship constitutes a consent to state court jurisdiction, we deem this to be presently of no determinative consequence. See *Shaffer v. Heitner*, —— U.S. at ——, 97 S.Ct. at 2592 (Brennan, J., concurring and dissenting). Stated otherwise, under the minimum contact precept these defendants, albeit as directors of Environmental of Iowa, did individually cause a fraudulent corporate business activity to be conducted in Iowa which resulted in harm to citizens of this state. Defendants Thornton, Hazeldine and Stelle are attendantly amenable to *in personam* jurisdiction of our Polk District Court and their special appearances should have been overruled. Trial court erred in holding otherwise and on remand an adjudication shall in each instance be entered consistent herewith.

In summary, we affirm as to defendant Environmental Securities Company of Illinois; reverse and remand with instructions as to defendants John C. Thornton, Kenneth E. Hazeldine and Russell T. Stelle.

Affirmed in part, reversed in part, and remanded with instructions.