BERKLEY INTERNATIONAL CO., LTD. and Berkley and Company, Inc., Appellees,

v.

Francis P. DEVINE, Appellant.

No. 63580.

Supreme Court of Iowa.

March 19, 1980.

Robert W. Sackett, Donald J. Hemphill and Bradley Howe of Sackett, Sackett, Hemphill & Howe, Spencer, for appellant.

David W. Belin and Dennis W. Johnson of Belin, Harris, Helmick & Lovrien, Des Moines, and William E. Kunze of Bedell & Kunze, Spirit Lake, for appellees.

Considered by REYNOLDSON, C. J., and LeGRAND, REES, UHLENHOPP and McGIVERIN, JJ.

McGIVERIN, Justice.

The sole issue in this appeal is whether the exercise of in personam jurisdiction over defendant Francis P. Devine under section 617.3, The Code, by the Iowa district court, is consistent with due process of law. The issue was raised when the district court overruled defendant's special appearance. We granted interlocutory appeal to defendant under Iowa R. App.P. 2. We now affirm.

Plaintiff Berkley and Company, Inc. (Berkley) is an Iowa corporation with its principal place of business in Spirit Lake, Iowa. Berkley is engaged in the business of manufacturing and selling fishing tackle. Plaintiff Berkley International Company, Ltd. (BIC) is a Taiwan corporation and a subsidiary of Berkley. BIC also is engaged in the fishing tackle business.

On January 8, 1979, plaintiffs filed a petition in the Iowa district court of Dickinson County against defendant, a resident of Taiwan. Plaintiffs followed the provisions of section 617.3, our long-arm statute, in an effort to obtain personal jurisdiction over defendant. Devine filed a special appearance, supported by affidavit, contesting the power of the Iowa court to exercise personal jurisdiction over him. Plaintiffs resisted the special appearance. After hearing, the district court, based on the evidence adduced at the hearing, the affidavits of all parties and answers by plaintiffs to written interrogatories posed by defendant, entered its findings, conclusions, and order overruling defendant's special appearance.

Defendant does not ask us to determine whether the requirements of section 617.3, The Code 1979,[1] were complied with by plaintiffs. He concedes they were. Devine only contends that exercise of jurisdiction over his person by the Iowa court violates his due process rights under the fourteenth amendment to the United States Constitution.

■ Concerning our scope of review in cases of this type, we have said:

In passing on a special appearance we accept the allegations of the petition as true. Plaintiff has the burden of sustaining the requisite jurisdiction, but once it has made a prima facie case, the burden is on defendant to produce evidence to rebut or overcome the prima facie showing.

*Rath Packing Company v. Intercontinental Meat Traders, Inc.,* 181 N.W.2d 184, 185 (Iowa 1970); *Kagin's Numismatic Auctions, Inc. v. Criswell,* 284 N.W.2d 224, 225 (Iowa 1979) (citing *Rath Packing Company* ).

■ "The hearing and disposition of a special appearance is a special proceeding; upon the materials and any testimony presented, the trial court finds the facts, draws conclusions of law, and enters its decision." *Kagin's,* 284 N.W.2d at 226. " '[T]he findings of the trial court have the force and effect of a jury verdict.' " *Id.* at 225; *Rath Packing Company,* 181 N.W.2d at 185. We are not, however, bound by the trial court's application of legal principles or its conclusions of law. *Kagin's,* 284 N.W.2d at 225; *DeCook v. Environmental Security Corporation, Inc.,* 258 N.W.2d 721, 726 (Iowa 1977).

In analyzing cases involving a challenge to the exercise of in personam jurisdiction under our long-arm statute over a defendant, we ordinarily follow a two-step procedure, first applying section 617.3 and then considering the constitutional issue. *Kagin's,* 284 N.W.2d at 227–28. However, because defendant does not assert noncompliance with section 617.3, we need only discuss the constitutional issue.

1. Section 617.3 provides in pertinent part:
   If a nonresident person makes a contract with a resident of Iowa to be performed in whole or in part by either party in Iowa, or if such person commits a tort in whole or in part in Iowa against a resident of Iowa, such acts shall be deemed to be doing business in Iowa by such person for the purpose of service of process or original notice on such person under this section, and shall be deemed to constitute the appointment of the secretary of state of the state of Iowa to be the true and lawful attorney of such person upon whom may be served all lawful process or original notice in actions or proceedings arising from or growing out of such contract or tort. . . . The making of the contract or the committing of the tort shall be deemed to be the agreement of such corporation or such person that any process or original notice so served shall be of the same legal force and effect as if served personally upon such defendant within the state of Iowa. The term "resident of Iowa" shall include any Iowa corporation, any foreign corporation holding a certificate of authority to transact business in Iowa, any individual residing in Iowa, and any partnership or association one or more of whose members is a resident of Iowa.

In *Kagin's*, 284 N.W.2d at 228, we stated the following, which bears on the constitutional claim raised by Devine here:

> The constitutional limitations upon a state's ability to assert in personam jurisdiction over a foreign defendant have been outlined in three often-cited United States Supreme Court cases. In *International Shoe Co. v. Washington* the Court held
>
>> due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."
>
> 326 U.S. 310, 316–17, 66 S.Ct. 154, 158–59, 90 L.Ed. 95, 102–03 (1945). In the later case of *McGee v. International Life Insurance Co.*, the Court construed *International Shoe* to require in a contract action that the contract have a "substantial connection" with the state which is asserting jurisdiction. 355 U.S. 200, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, 226 (1957). Then in *Hanson v. Denckla*, the Court further refined the *International Shoe* standard in the following manner:
>
>> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.
>
> 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958).

■ We must consider whether this State's assertion of in personam jurisdiction over Devine meets the *International Shoe* requirement of fair play and substantial justice. We look to the following five factors to make such a determination, the first three being most important:

(1) The quantity of the contacts;

(2) The nature and quality of the contacts;

(3) The source and connection of the cause of action with those contacts;

(4) The interest of the forum state; and

(5) Convenience.

*Douglas Machine & Engineering Co., Inc. v. Hyflow Blanking Press Corporation*, 229 N.W.2d 784, 789 (Iowa 1975). *Kagin's*, 284 N.W.2d at 228–29 (citing *Douglas Machine*).

Plaintiffs, BIC and Berkley, each alleged that Devine is liable to them for breach of contract, breach of fiduciary duty and fraud and that his wrongful acts caused damage to plaintiffs in Iowa.

■ In applying the above constitutional principles we must enumerate Devine's contacts with Iowa resulting from his alleged breach of contract with plaintiffs, his alleged breach of fiduciary duty owed plaintiffs, and his alleged commission of a tort against plaintiffs. *Kagin's*, 284 N.W.2d at 228–29.

The district court found: that defendant was an employee of Berkley, an Iowa corporation, with which he had substantial and continual contact by personal conferences in Iowa and telex and telephone messages; that plaintiffs alleged that defendant's breach of contract, breach of fiduciary duty and fraudulent practices, or combinations thereof, would produce injury or damages to plaintiffs in Iowa and that defendant would reasonably believe that such conduct would produce damage to plaintiffs in Iowa; and that defendant executed a written employment agreement consenting to jurisdiction of the Iowa court for the purposes of interpreting that agreement.

We believe the court's findings are supported by substantial evidence in the record.

In late 1971, Berkley placed an advertisement in the *Wall Street Journal* for an employee to manage Berkley's Taiwan operation. Devine, then a resident of Virgin-

ia, responded to this advertisement and an interview with Devine was held at Berkley's headquarters in Spirit Lake, Iowa, on December 7 and 8, 1971.

Following the interview, Berkley offered defendant the position as manager of BIC's operations in Taiwan. Defendant was to be an employee of Berkley. Defendant accepted the offer. On February 21, 1972, defendant executed a written contract in which he specifically consented to the jurisdiction of the Iowa district court to hear any disputes arising out of the contract. This contract was signed at Berkley's headquarters in Spirit Lake, Iowa. Defendant also participated in a training and orientation program while in Spirit Lake. Devine then went to Taiwan and assumed his duties.

Under the specific terms of his employment with Berkley, Devine was required to report to the president of Berkley in Spirit Lake, Iowa, on a regular basis regarding operations in Taiwan.

Pursuant to the terms of his contract, from February 1972 until May 31, 1978, Devine communicated with Berkley in Spirit Lake by making phone calls to Berkley approximately three times per month and by sending letters to Berkley in Spirit Lake several times per month. Devine also communicated to Berkley headquarters in Spirit Lake by sending telexes on a very frequent basis. Defendant made seven or eight personal visits to Spirit Lake for business conferences with his employer. Over 1000 contacts were made by defendant with Iowa by these various means during his six years as a Berkley employee.

The president of Berkley testified that Devine made numerous fraudulent misrepresentations to him about his handling of the business and assets of plaintiffs during the course of the foregoing communications from Taiwan and during nearly all the personal meetings in Iowa.

During his Iowa visits, defendant persuaded his employer to deliver assets to Taiwan, which defendant wrongfully converted to his own use. In summary, plaintiffs claim that as a result of all these misrepresentations and actions, defendant was able to wrongfully obtain funds and equipment from Berkley and BIC. The net effect was to deplete the assets of Berkley, an Iowa corporation.

Devine was an employee of Berkley in Spirit Lake, Iowa, at all times material to the plaintiffs' cause of action. The contract of employment between defendant and Berkley required both parties to perform numerous acts in the state of Iowa. From February 1972 until May 31, 1978, when Devine was terminated, Berkley was specifically required to and did perform numerous obligations in Iowa under its contract of employment with Devine, including the payment of Devine's salary and bonuses, the withholding of federal income taxes, and the rendering of fringe benefits. Devine became eligible to and did participate in numerous fringe benefit programs with Berkley in Spirit Lake. In this respect, Devine purchased stock of Berkley. He also was given life insurance coverage, an accident insurance policy, a disability salary continuation plan and Blue Cross and Blue Shield medical coverage, all of which originated out of Berkley in Spirit Lake.

The record supports the findings of the trial court.

In assessing the various contacts defendant had with Iowa in terms of their quantity, nature, quality, source and connection to the cause of action, *Douglas Machine*, 229 N.W.2d at 789, we conclude that the assumption of jurisdiction by the Iowa court in this case does not offend traditional notions of fair play and substantial justice. This conclusion is supported by several of our recent cases. *E. g., Kagin's Numismatic Auctions, Inc. v. Criswell*, 284 N.W.2d 224 (Iowa 1979) (contract for eventual sale of coins partially performed in Iowa); *DeCook v. Environmental Security Corporation*, 258 N.W.2d 721 (Iowa 1977) (tort of conspiracy committed in Indiana but having an effect on the stock of an Iowa corporation); *Norton v. Local Loan*, 251 N.W.2d 520 (Iowa 1977) (one tortious phone call from outside Iowa causing emotional distress in Iowa).

In addition, the state of Iowa has a strong interest in protecting Iowa residents from damage as a result of tortious actions and breach of contractual duties by nonresident defendants. *DeCook*, 258 N.W.2d at 728–29; *see Kagin's*, 284 N.W.2d at 229. If the facts as stated by plaintiffs are true, injury or damage would occur to plaintiffs in the state of Iowa and defendant would reasonably believe that such conduct would produce damage to plaintiffs in the state of Iowa. *DeCook*, 258 N.W.2d at 728. Thus, Iowa clearly has a strong interest in hearing this case.

Defendant also mentions, but does not stress, in his brief that trial in Iowa would be inconvenient for him. The fact that defendant would have to travel from Taiwan to Iowa to defend the present cause of action, while inconvenient to him, does not offend traditional notions of fair play and substantial justice. To the extent Devine exercised the privilege of working for an Iowa resident, that privilege also gave rise to obligations arising out of his activities with and affecting Iowa. Devine received the benefits and protections of the law of Iowa, including the right to use the Iowa courts to enforce the rights he had against Berkley. Therefore, *Hanson v. Denckla* does not deprive Iowa of jurisdiction over the person of defendant in this case. *Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1240, 2 L.Ed.2d at 1298.

We are not faced with a case factually similar to *World-Wide Volkswagen Corporation v. Woodson*, —— U.S. ——, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), in which the Supreme Court found that the exercise of in personam jurisdiction over defendants (New York corporations that did no business in the forum state of Oklahoma), in a product-liability action by a husband and wife for personal injuries sustained in Oklahoma while in an accident involving an automobile that they had purchased in New York, would offend the limitations on the State's jurisdiction imposed by the due process clause of the fourteenth amendment. The Court found an absence of circumstances necessary to predicate an exercise of in personam jurisdiction over de-

fendants. The New York defendants did not carry on any activity in Oklahoma, closed no sales and performed no services there, did not avail itself of any of the benefits and protections of Oklahoma law, did not solicit business there through salespersons or advertising reasonably calculated to reach Oklahoma, did not regularly sell cars to Oklahoma residents and did not indirectly serve or seek to serve the Oklahoma market. Even though it was foreseeable that automobiles sold by defendants would travel to Oklahoma and cause injury there, that kind of foreseeability is not sufficient to exercise personal jurisdiction over a defendant.

> This is not to say, of course, that foreseeability is wholly irrelevant. But the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendants conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.

*Id.* at ——, 100 S.Ct. at 567, 62 L.Ed.2d at 501.

We need not decide in the present case and therefore reserve the question whether the *World-Wide Volkswagen Corporation* case effectively overrules our earlier case of *Edmundson v. Miley Trailer Co.*, 211 N.W.2d 269 (Iowa 1973) (trailer hitch manufactured outside Iowa causing a motor vehicle accident in Iowa held to constitute sufficient contact to sustain Iowa jurisdiction over the manufacturer).

Devine should have reasonably foreseen that any tortious activity or violation of contractual duties on his part concerning plaintiffs would have significant impact in this state, *DeCook*, 258 N.W.2d at 728, and that due to this conduct and because of his connection with Iowa he should reasonably have anticipated being subject to court action in this state. *World-Wide Volkswagen Corporation v. Woodson*, —— U.S. at ——, 100 S.Ct. at 564, 62 L.Ed.2d at 498. Therefore, in light of the various contacts defendant had with Iowa in terms of their quanti-

ty, nature, quality, source and connection to the cause of action, it cannot be said that exercise of in personam jurisdiction over Devine by the Iowa district court violates defendant's rights under the due process clause of the United States Constitution.

We have considered all of defendant's contentions, whether specifically discussed or not, and find them without merit. The district court was right. The case is affirmed. We return the case to the district court for further proceedings pursuant to the Rules of Civil Procedure.

AFFIRMED.