STATE of Iowa ex rel. Thomas J. MILLER, Attorney General of Iowa, Appellee,

v.

Moneda Corporation d/b/a Puzzles N' Prizes, ADMI, Inc. d/b/a Treasure Express and Unawarded Cash Distribution Center, Defendants,

Lennard GRODZINSKY, Individually and in His Corporate Capacity, and Gary Grande, Individually and in His Corporate Capacity, Appellants.

No. 95–2126.

Supreme Court of Iowa.

Sept. 17, 1997.

As Amended on Denial of Rehearing Dec. 11, 1997.

David L. Charles and Mark E. Weinhardt of Belin Harris Lamson McCormick, P.C., Des Moines, for appellants.

Thomas J. Miller, Attorney General, and Chris Odell, Assistant Attorney General, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, CARTER, and SNELL, JJ.

LARSON, Justice.

The State of Iowa, through the attorney general, sued two corporate officers and their

employers for alleged violations of our consumer fraud statutes, Iowa Code §§ 714.16, 714.16A (1993). All of the defendants are residents of Nevada. Individual defendants Grodzinsky and Grande moved to dismiss the suits for lack of personal jurisdiction under Iowa Rule of Civil Procedure 104(a), raising the "corporate shield" doctrine and asserting a lack of sufficient contacts with Iowa to allow for the exercise of personal jurisdiction over them.[1] The district court held that the fiduciary-shield doctrine did not apply and therefore denied the motions to dismiss. The defendants brought this interlocutory appeal, and we affirm.

## I. *The Facts.*

At the times pertinent to this appeal, Grodzinsky was director and president of the defendant Moneda Corporation, and Gary Grande was the president and sole director of ADMI, Inc. Moneda and ADMI are closely related corporations. Grande was an incorporator of both corporations, and he was the president and sole shareholder of ADMI. The corporations have the same registered agent, and they share the same business address. Grande, as president of ADMI, oversaw the company's financial status, and he was directly involved in the design and creation of the contests in question. Grodzinsky was the president and sole director of Moneda. The attorney general alleges that Grodzinsky reviewed and approved the design and structure of the Moneda contests.

Between 1989 and 1993 Moneda and ADMI conducted at least fifteen separate direct mail contests and sweepstakes, many requiring participants to remit entry fees. The attorney general charged that the corporations and the individual defendants had violated the Consumer Fraud Act and the Consumer Fraud Against Older Persons Act by soliciting money from Iowans.

The attorney general's petition alleges a series of false statements, deceptive sales tactics, and unfair practices aimed at induc-

ing Iowa consumers, particularly older ones, to participate. The contests were given such names as "Magic Money Maker" and "Count up Your Cash." The entry forms, it is alleged, were misleading and were intentionally worded to confuse the recipients. Partly through the use of "legalese," the forms gave the impression that an entrant was virtually assured to receive money. In addition, the forms greatly exaggerated the entrant's chance of winning money; the "Magic Money Maker," for example, stated:

> The Magic Money Maker can't wait to pay out Big Money for winning scores. Send one in and *You Are Guaranteed up to $31,777.00 Cash rushed straight to your door! Stay eligible!*
>
> *Send in YOUR Cash Ticket TODAY!*

## II. *Review of a Ruling on a Motion to Dismiss.*

In reviewing a ruling on a motion to dismiss for lack of personal jurisdiction,

> we accept as true the allegations of the petition and the contents of uncontroverted affidavits. The plaintiff has the burden to sustain the requisite jurisdiction, but when [the plaintiff] establishes a prima facie case the defendant has the burden of producing evidence to rebut that showing. The trial court's findings of fact have the effect of a jury verdict and are subject to challenge only if not supported by substantial evidence in the record; we are not bound, however, by the trial court's application of legal principles or its conclusions of law.

*Aquadrill, Inc. v. Environmental Compliance Consulting Servs., Inc.,* 558 N.W.2d 391, 392 (Iowa 1997) (quoting *Meyers v. Kallestead,* 476 N.W.2d 65, 66 (Iowa 1991)).

The defendants have presented affidavits and depositions to show they acted solely in their role as corporate agents and that they had insufficient contacts in their own right with the State of Iowa to subject them to personal jurisdiction.[2]

---

1. The corporations have not challenged the district court's jurisdiction over them, and this appeal involves only the narrow issue of the court's personal jurisdiction over the individuals Grodzinsky and Grande.

2. A motion to dismiss based on jurisdictional grounds, as opposed to one alleging a failure to state a claim on which relief may be granted, may be supported by affidavits or other forms of evidence outside the petition. *See Martin v. Ju–*

## III. *The Personal Jurisdiction Issue.*

■ We apply a two-step analysis to determine whether a district court appropriately exercised personal jurisdiction:

(1) Whether a statute or rule authorizes the exercise of jurisdiction, and

(2) Whether the exercise of jurisdiction would offend the due process principles of the United States Constitution.

*Aquadrill,* 558 N.W.2d at 392.

Iowa Code section 617.3, our "long-arm" statute, allows an expansive exercise of jurisdiction over foreign parties. It provides, in part:

If a nonresident person makes a contract with a resident of Iowa to be performed in whole or in part by either party in Iowa, or if such person commits a tort in whole or in part in Iowa against a resident of Iowa, such acts shall be deemed to be doing business in Iowa by such person for the purpose of service of process or original notice on such person under this section, and shall be deemed to constitute the appointment of the secretary of state of the state of Iowa to be the true and lawful attorney of such person upon whom may be served all lawful process or original notice in actions or proceedings arising from or growing out of such contract or tort.

In addition, Iowa Rule of Civil Procedure 56.2 provides for the broadest expanse of personal jurisdiction consistent with due process.

Every corporation [or] individual ... that shall have the necessary minimum contact with the state of Iowa shall be subject to the jurisdiction of the courts of this state, and the courts of this state shall hold such ... individual ... amenable to suit in Iowa in every case not contrary to the provisions of the Constitution of the United States.

The basis of the defendants' jurisdictional argument is twofold: (1) the "corporate shield" doctrine insulates these defendants from the court's jurisdiction, and (2) they had insufficient contacts with Iowa in their own right to provide a basis for personal jurisdic-

*Li Corp.,* 332 N.W.2d 871, 873 (Iowa 1983);

tion. For reasons we discuss later, when a corporate agent acts in such a way as to be subject to personal jurisdiction of an Iowa court, irrespective of the court's jurisdiction over the corporation, the corporate shield is inapplicable. We therefore discuss the defendants' two issues simultaneously.

We have discussed the corporate-shield doctrine in several cases. *See, e.g., Aquadrill,* 558 N.W.2d at 394–95; *Whalen v. Connelly,* 545 N.W.2d 284, 295–96 (Iowa 1996); *State ex rel. Miller v. Baxter Chrysler Plymouth, Inc.,* 456 N.W.2d 371, 378 (Iowa 1990); *State ex rel. Miller v. Internal Energy Management Corp.,* 324 N.W.2d 707, 711 (Iowa 1982); *DeCook v. Environmental Sec. Corp.,* 258 N.W.2d 721, 727–28 (Iowa 1977).

■ This doctrine is a due process limitation on the exercise of personal jurisdiction. *Internal Energy Management Corp.,* 324 N.W.2d at 711. Under this doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit the forum to exercise jurisdiction over the agent. *Davis v. Metro Prods., Inc.,* 885 F.2d 515, 520 (9th Cir.1989).

We have said that the rationale of the doctrine is that exercising jurisdiction over a corporate agent solely on the court's jurisdiction over the corporation itself would "offend traditional notions of fair play and substantial justice." *Internal Energy Management Corp.,* 324 N.W.2d at 710 (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490, 498 (1980)).

As one authority has explained it:

A problem analogous to that raised by the question of when service on a subsidiary constitutes service on the parent corporation is presented when plaintiff is seeking to acquire jurisdiction over the principals of a corporation on an individual basis, and the individuals contend that all of their acts within the jurisdiction were carried out solely in a corporate capacity.

4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1069, at 370 (1987) [hereinafter Wright & Miller].

Iowa R. Civ. P. 116.

## IV. Jurisdiction Over Individual Corporate Officers.

■ A corporate shield does not insulate an agent under all circumstances; the agent is still subject to personal jurisdiction of the court if the agent is a "primary participant[ ] in an alleged wrongdoing intentionally directed at [forum-state] resident[s], and jurisdiction over [him] is proper on that basis." *Calder v. Jones,* 465 U.S. 783, 790, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804, 813 (1984). If this were not so, a person could commit fraud with impunity by simply wrapping up in a foreign corporation. *See Internal Energy Management Corp.,* 324 N.W.2d at 716. One authority has explained the limitation on the corporate-shield doctrine:

> [T]he corporation ordinarily will insulate the individuals from the court's personal jurisdiction. Thus, jurisdiction over individual officers and employees of a corporation may not be predicated on the court's jurisdiction over the corporation itself, *unless the individuals are engaged in activities within their jurisdiction that would subject them to the coverage of the state's long-arm statute.*

Wright & Miller § 1069, at 370–72 (emphasis added).

In *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), the Supreme Court held that in a diversity case the long-arm statute of New Hampshire was properly applied to assert jurisdiction over a nonresident magazine and its employees. The Court held that the general course of conduct in circulating magazines throughout the State of New Hampshire, purposefully directed at New Hampshire, "inevitably affected persons in the state." *Keeton,* 465 U.S. at 774, 104 S.Ct. at 1478, 79 L.Ed.2d at 797. It concluded that

> [s]uch regular monthly sales of thousands of magazines cannot by any stretch of the imagination be characterized as random, isolated, or fortuitous. It is, therefore, unquestionable that New Hampshire jurisdiction over a complaint based on those contacts would ordinarily satisfy the requirement of the Due Process Clause that a State's assertion of personal jurisdiction

over a nonresident defendant be predicated on "minimum contacts" between the defendant and the State.

*Id.* (citing *World–Wide Volkswagen Corp.,* 444 U.S. at 297–98, 100 S.Ct. at 567–68, 62 L.Ed.2d at 500–01; *International Shoe Co. v. Washington,* 326 U.S. 310, 317, 66 S.Ct. 154, 158–59, 90 L.Ed. 95, 102–03 (1945)).

While the corporate-shield doctrine was not directly involved in the *Keeton* case, the Court explained *Calder v. Jones,* filed the same day, as holding that the corporate-shield doctrine would not protect employees from exercise of jurisdiction based on their own activities. In discussing *Calder,* the Court in *Keeton* stated that

> we today reject the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity. But jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him; nor does jurisdiction over a parent corporation automatically establish jurisdiction over a wholly owned subsidiary. Each defendant's contacts with the forum State must be assessed individually.

*Keeton,* 465 U.S. at 782 n. 13, 104 S.Ct. at 1482 n. 13, 79 L.Ed.2d at 802 n. 13 (citations omitted).

In *Calder* a California plaintiff sued the *National Enquirer* and two of its employees, all residents of Florida, for damages arising out of the publication of an alleged defamatory *Enquirer* article. One defendant, South, was the reporter for the *Enquirer* who wrote the first draft of the article, and his by-line appeared on it. He lived and did most of his research in Florida, relying on phone calls to sources in California for the information contained in the article. Defendant Calder was president and editor of the *Enquirer.* As such, he "oversee[s] just about every function of the Enquirer." *Calder,* 465 U.S. at 786, 104 S.Ct. at 1485, 79 L.Ed.2d at 810. Calder reviewed and approved the initial evaluation of the subject of the article and edited it in its final form. He also declined to print a retraction requested by the plaintiff. Nei-

ther South nor Calder had any other relevant contacts with the forum state.

The Supreme Court held that a state court in California properly exercised personal jurisdiction over the nonresident employees as well as the corporation itself. It concluded that, while the actions causing the effects in California occurred in Florida, the article was drawn from California sources, the brunt of the harm occurred in California, and California was the focal point both of the story and of the harm it caused. "Jurisdiction over [the employees] is therefore proper in California based on the 'effects' of their Florida conduct in California." *Calder*, 465 U.S. at 789, 104 S.Ct. at 1486–87, 79 L.Ed.2d at 812 (citing *World–Wide Volkswagen Corp.*, 444 U.S. at 297–98, 100 S.Ct. at 567–68, 62 L.Ed.2d at 501–02).

In rejecting the application of the corporate-shield doctrine, the Court in *Calder* stated that the *Enquirer*'s employees

are not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California. Petitioner South wrote and petitioner Calder edited an article that they knew would have a potentially devastating impact upon respondent. And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the National Enquirer has its largest circulation.

465 U.S. at 789–90, 104 S.Ct. at 1487, 79 L.Ed.2d at 812. Further, the Court stated that

[the employees] are correct that their contacts with California are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum State must be assessed individually. In this case, [the defendants] are primary participants in an alleged wrongdoing intentionally directed at a California resident, and jurisdiction over them is proper on that basis.

*Id.* at 790, 104 S.Ct. at 1487, 79 L.Ed.2d at 813 (citations omitted).

In *Davis v. Metro Productions, Inc.*, 885 F.2d 515 (9th Cir.1989), the plaintiff sued two employees of a foreign corporation under Arizona's long-arm statute. The defendants, Smith and Miller, were the sole shareholders and officers of a corporation called "Metro." They had been active participants in the corporation's solicitation of business from Arizona residents, including the plaintiff Davis. *Davis*, 885 F.2d at 522.

The court held that the defendants' acts

did not amount to "untargeted negligence," but rather, [the defendants] should reasonably have known that their actions "could have [an] effect on the plaintiff, ... and that the brunt of the injury caused by their actions would be felt in [the forum state]." [The individual defendants] could have reasonably foreseen that they would be haled into Arizona's courts if the investments by Allen's clients in Arizona resulted in litigation.

*Id.* at 523 (citations omitted). The court, relying on *Calder*, rejected the application of the corporate-shield doctrine because the activities of the employees themselves were sufficient to subject them to the court's personal jurisdiction. *Id.* at 521–23.

Under the argument by Grodzinsky and Grande, a nonresident could personally commit fraudulent acts in Iowa with jurisdictional immunity if that person simply wrapped up in the cloak of a corporation. They point to language in our cases, such as *Aquadrill*, which they claim support that position. In *Aquadrill*, for example, we stated that

"[a]ccording to the [fiduciary-shield] doctrine a nonresident corporate agent is not individually subject to the forum state's in personam jurisdiction if that individual's only contact with the state is by virtue of his acts as a fiduciary of the corporation."

558 N.W.2d at 394 (quoting *Whalen*, 545 N.W.2d at 295). Despite this broad language, however, the holding in *Aquadrill* was considerably narrower. We refused to apply the corporate-shield doctrine to a person who, while a corporate officer, acted to protect his own investment in the corporation. *Aquadrill*, 558 N.W.2d at 395. In our first case discussing the corporate-shield doctrine,

*DeCook*, we made it clear that the doctrine would not be applied in facts analogous to those in the present case. In *DeCook* we rejected the application of the shield under circumstances similar to those in the present case. In that case, the defendants were non-resident directors of a defendant corporation. The plaintiffs contended that the directors were subject to personal jurisdiction in Iowa pursuant to our long-arm statute and that their acts in furthering an alleged improper activity of the corporation were sufficient to subject them to personal jurisdiction in Iowa. We stated:

> Defendants assert the corporate cloak should insulate these named individual directors from an Iowa court's personal jurisdiction. They rely on those cases stating the general rule that personal jurisdiction over nonresident individual officers, agents or employees of a foreign corporation cannot be predicated merely upon jurisdiction over the corporation itself.
>
> Noticeably, these cases focus upon the distinction between corporate affairs conducted by an officer and business conducted by an officer of a corporation in his own behalf.

*DeCook*, 258 N.W.2d at 727 (citations omitted). We rejected the corporate-shield doctrine, stating that

> it is alleged these specially appearing parties caused tortious injury to corporate shareholders in this state by (1) authorizing the sale of securities in Iowa, then (2) aiding in converting resultant revenues to their own benefit or other self-serving uses. All this militates against application of the above stated general rule [the corporate-shield doctrine] dealing with *in personam* jurisdiction over corporate directors. In other words, the present situation is such that due process of law will not be denied by requiring these individual directors to defend in the instant Iowa actions.

*Id.* at 728. *DeCook* has never been overruled, and despite the broad language in cases postdating *DeCook*, such as in *Aquadrill*, the holding in *DeCook* is intact. A corporate shield does not insulate a nonresident defendant from jurisdiction of an Iowa court for personal acts causing injury to residents of Iowa. *See DeCook*, 258 N.W.2d at 727-29; Wright & Miller § 1069, at 370-72. Any reading of our cases that would apply the corporate shield to an employee merely because of his or her association with a corporation is specifically disapproved. To immunize a defendant from jurisdiction merely because that defendant is associated with a corporation would allow the corporate shield to be used as a sword.

## V. *Application to the Facts.*

■ With these legal principles in mind, we look to the facts as alleged by the attorney general's petition, assuming for purposes of the jurisdictional issue, that the allegations are true. *Internal Energy Management Corp.*, 324 N.W.2d at 709. The petition alleges, in part, that:

> 6. Defendants Grande and Grodzinsky are responsible for the design, layout and writing of the prize promotions Moneda Corporation and ADMI, Inc. have marketed in Iowa. Defendants Grande and Grodzinsky manage, control and direct all business policies, activities, operations, financial transactions, and acts of Moneda Corporation and ADMI, Inc., directly and/or indirectly through agents and employees hired by them and acting at their direction.
>
> 7. The defendants, acting individually, jointly, and in concert, have formulated, controlled, participated in or assisted in the implementation of the business practices described herein. The term "defendants" shall refer to Moneda Corporation d/b/a Puzzles N' Prizes, ADMI, Inc. d/b/a Treasure Express, Gary Grande, and Lennard Grodzinsky.
>
> 8. Defendants Moneda Corporation, ADMI, Inc., Gary Grande, and Lennard Grodzinsky have mailed solicitations to consumers across Iowa, including consumers residing in Polk County. Venue is proper in Polk County, Iowa pursuant to Iowa Code Section 714.16(10).

We conclude that the allegations of personal conduct on the part of Grande and Grodzinsky are sufficient to establish personal jurisdiction over them. Because of their

"primary participat[ion] in an alleged wrongdoing intentionally directed at [Iowa] resident[s]," *Calder*, 465 U.S. at 790, 104 S.Ct. at 1487, 79 L.Ed.2d at 813, they are subject to jurisdiction in Iowa. The district court properly denied the motions to dismiss.

**AFFIRMED.**