Dale GRABER and Menno Hofer, d/b/a
G & H Enterprises, a Partnership,
Plaintiff,

v.

PRELIN INDUSTRIES, INC., et al.,
Defendants.

Dwight PULLMAN, Plaintiff,

v.

PRELIN INDUSTRIES, INC., et al.,
Defendants.

Merle OLSON et al., Plaintiff,

v.

PRELIN INDUSTRIES, INC., et al.,
Defendants.

Len AMAN, aka Lenhardt Aman,
Plaintiff,

v.

PRELIN INDUSTRIES, INC., et al.,
Defendants.

Dale BULLER, Plaintiff,

v.

PRELIN INDUSTRIES, INC., et al.,
Defendants.

Civ. Nos. 72–4056 to 72–4060.

United States District Court,
D. South Dakota, S. D.

Jan. 2, 1974.

John H. Zimmer and Gary L. Richter of Zimmer & Richter, Parker, S. D., for plaintiffs.

Gary J. Pashby of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, S. D., for defendants Prelin, Starnes, Brady, Hudson, Denton and Priest.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

Len Aman, et al., citizens of South Dakota, filed these actions in tort against defendants, Prelin Industries,

Inc., an Oklahoma corporation presently involved in bankruptcy proceedings, and Warren J. Starnes, Lee Buffington, Lester Brady, Roy Hudson, a/k/a Burford R. Hudson, Michael G. Denton, Glen R. Priest and Jerry Eutsler, individually and as officers or directors of Prelin Industries, Inc., pursuant to the provisions of S.D.C.L. 37–25–3, 37–25–22, and 37–25–25, multi-level distribution laws of South Dakota.[1]

Defendants Starnes, Brady, Hudson, Denton and Priest, all residents of either Texas or Oklahoma, were personally served with summonses in this action outside South Dakota under the provisions of the "long-arm" statute, S.D.C.L. 15–7–2.[2] (Defendants Buffington and Eutsler are not before this court as they were never served with process.)

This Court is presently considering motions by the defendants to dismiss these actions, or in lieu thereof, to quash the return of summonses, on the ground of lack of personal jurisdiction.

Each plaintiff seeks damages against defendants over $10,000 based on alleged misrepresentation and tortious breach of contract in relation to a multi-level distribution plan operated by defendant

---

1. S.D.C.L. 37–25–3. *Registration required prior to offering multi-level distribution plan.*—Any multi-level distribution company desiring to market its goods or services in this state shall make application to the commissioner for registration at least sixty days prior to offering a multi-level distribution marketing plan to any person within this state.
S.D.C.L. 37–25–22. *Grounds for recovery of treble damages by distributor.*—A distributor may recover treble damages against any person who directly or indirectly does any of the following:

(1) Fails to comply with the registration or offering provisions of this chapter, such failure shall constitute a presumption of fraud;

(2) Fails to conform with the undertaking set forth in the applicable offering prospectus;

(3) Uses fraud in the sale of a multi-level distribution marketing plan.
S.D.C.L. 37–25–25. *Joint and several liability of partners, officers, and directors.*—Every person who directly or indirectly con-

trols a person liable under § 37–25–22, every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, every employee of a person so liable, who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist.

2. The statute reads, in relevant part:
S.D.C.L. 15–7–2. *Acts within the state subjecting persons to jurisdiction of the courts.*—Any person is subject to the jurisdiction of the courts of this state as to any cause of action arising from the doing personally, through any employee, or through an agent, of any of the following acts:
. . . (2) The commission of any act which results in accrual within this state of a tort action;

.    .    .    .    .

Prelin Industries, Inc. Among the allegedly false and fraudulent misrepresentations made by defendants were: that plaintiffs would have the right to sell distributorships in the state of South Dakota; that defendant corporation was properly registered in South Dakota to do business and could legally sell multi-level distributorships in South Dakota. Believing these representations to be true, the plaintiffs purchased Prelin distributorships and, as a result, incurred numerous losses since their contracts with defendants were made worthless in South Dakota by Prelin's failure to comply with the registration requirements of the state.

Prelin Industries received and retained the payments made by plaintiffs and delivered its products to them. It was not until this point in time, plaintiffs contend, that they learned Prelin had not properly applied for registration under South Dakota's Multi-Level Distributorship Law, S.D.C.L. 37–25–3. Plaintiffs are therefore claiming damages for the amounts paid to Prelin for a) the right to sell distributorships, b) schooling, c) literature and sales aids, d) unsold products of which it cannot dispose, and in some cases, e) lost profits by being forced to return payments to other distributors who had signed up with various plaintiffs, f) travel expenses and value of time spent in promotion of distributorships, g) freight and storage expenses, and h) telephone expenses.

The total damages claimed by each of the plaintiffs is as follows:

| | |
|---|---|
| Dale Graber | $35,033.76 |
| Dwight Pullman | 10,459.53 |
| Sperling—Olson | 12,464.94 |
| Len Aman | 12,264.15 |
| Dale Buller | 68,559.69 |

The jurisdictional amount is reached in three of the cases (Pullman, Sperling—Olson, Aman) through S.D.C.L. 37–25–22, *supra* at footnote 1.

The complaints reveal that the respective plaintiffs entered into their contractual relationships with Prelin at the following times:

| | |
|---|---|
| Dale Graber | 6/5/71 |
| Dwight Pullman | 7/3/71 |
| Dale Buller | 8/10/71 |
| Sperling—Olson | 8/31/71 |
| Len Aman | 9/2/71 |

None of the defendants was ever physically present in the State of South Dakota for contractual negotiations or for any reasons relating to these distributorships prior to the accrual of the causes of action, the most recent of which would be 9/2/71. The facts do show, however, by uncontroverted affidavit, that promotional schools were held in May, June, and August of 1971, in Minneapolis, Minnesota, and Fargo, North Dakota, at which various defendants were present. According to affidavit by Dale Graber, it was at these meetings that plaintiff Graber and other South Dakota residents were allegedly assured by defendants that Prelin had complied with the South Dakota registration requirements.

There are two legal questions to be decided:

(a) whether South Dakota has limited its jurisdiction under the "long-arm" statute so as to preclude the statute's application to this case;

(b) whether, if the statute would be applicable in the present suit, the exercise of jurisdiction would violate defendants' rights to due process of law under the Fourteenth Amendment. Aftanase v. Economy Baler Company, 343 F.2d 187 (8th Cir. 1965); Electro-Craft Corp. v. Maxwell Electronics Corp., 417 F.2d 365 (8th Cir. 1969).

1. *South Dakota long-arm jurisdiction under State Supreme Court decisions.* Our research reveals only two decisions by South Dakota's highest court interpreting the "long-arm" statute, both of which were made under section (1) of the statute, "the transaction of any business within the state", whereas this action is brought under section (2), "The commission of any act which re-

sults in accrual within this state of a tort action."[3] See Ventling v. Kraft, 83 S.D. 465, 161 N.W.2d 29 (1968), Kelley v. Duling Enterprises, Inc., 84 S.D. 427, 172 N.W.2d 727 (1970).

Although *Ventling* was a contract action under S.D.C.L. 15–7–2(1), the court noted the expansive scope of the statute.

> The language of Ch. 163, Laws of 1965 (S.D.C.L. 15–7–2), appears to be designed to gain the fullest benefits from the United States Supreme Court cases supra in which the due process requirements under the Federal Constitution have been relaxed as they pertain to personal jurisdiction in civil actions. We believe the legislature by enacting the "long-arm" statute intended to provide South Dakota residents with maximum protection of South Dakota courts from damages and injuries occasioned them through the acts or omission, both contractual and tortious, of a nonresident when that nonresident has had the necessary minimal contacts with the state to comply with federal due process. *Ventling, supra,* 161 N.W.2d at 33, 34.

The *Kelley* case, *supra,* added nothing new, so that while there is no definitive statement from the South Dakota Supreme Court on a case such as this one, the Court *has* displayed a broad reading of the "long-arm" statute which would not seem to preclude the present action.

2. *Due Process.* Since due process is a federal constitutional issue, it is this Court's duty to determine by independent inquiry whether the due process standards are met here.. *Aftanase, supra* at 192. In determining this question, we have the steady line of United States Supreme Court cases by which to trace the development of personal jurisdiction over nonresidents. See International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), Travelers Health Ass'n. v.

Virginia ex rel. State Corporation Comm'n., 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950); Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 72 S. Ct. 413, 96 L.Ed. 485 (1952); McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

In the *Aftanase* opinion, *supra* at 197, Judge (now Justice) Blackmun gave a valuable summary of the standards set by the United States Supreme Court in this area. He stated that three primary factors must be considered, namely, 1) the quantity of the contacts, 2) the nature and quality of the contacts, 3) and the source and connection of the cause of action with those contacts, and that two others, 4) interest of the forum state and 5) convenience, should receive mention.

In *Aftanase, supra* at 187, a Michigan corporation had sold scrap metal balers to Minnesota residents upon orders being solicited by Minnesota salesmen. Each order was subject to approval by the home office, and the corporation shipped its order f.o.b. to Minnesota. The defendant had no place of business or agent in Minnesota and had never qualified to do business there. When a Minnesota resident was injured while working with the machine, a diversity action was begun in federal court. Personal service was quashed at the District Court level but was upheld by the Eighth Circuit Court of Appeals.

The court there concluded that the Supreme Court of Minnesota would have upheld substituted service under the Minnesota "long-arm" statute which declares a foreign corporation subject to service of process if it "commits a tort in whole or in part in Minnesota against a resident of Minnesota." Such a statute would seem stricter than the South Dakota language which validates personal jurisdiction over anyone who commits an act "which results in *accrual within*

---

3. For a discussion of "long-arm" statute application in tort actions, see 24 A.L.R.3d 532, especially Secs. 4(b) and 14.

*this state* of a tort action" (emphasis added), yet even under the Minnesota law, the court noted that the place of the tort is where the injury occurs. In the present case, the place of the tort had to be in South Dakota as that is where injury was suffered by the plaintiffs. They are South Dakota residents, living in South Dakota (except for one who is apparently in the armed services), who paid their money to Prelin from South Dakota banks, and who are prohibited by South Dakota statute from selling the product they bought *in* South Dakota.

By analyzing the facts in *Aftanase* through application of the general guidelines presented above, judge Blackmun found the following, relevant to due process:

1. *Quantity of contacts*—Although there were not necessarily continuous and systematic sales, this was not a single act case where an isolated offending product is the only contact between the defendant and the forum state.

2. *Nature and Quality of the contacts*—the balers were shipped directly to the Minnesota customer. There was no intervening dealer. Defendant Economy voluntarily placed its product on the Minnesota market, derived benefit therefrom, received the protection of Minnesota laws, and reasonably could have anticipated that this activity would have consequences in the state. *Aftanase, supra* at 197.

3. *Source and connection of the cause of action with those contacts*—Since the bailer was sold for use in Minnesota, Economy's obligation, which arose there when a Minnesota resident was injured, was connected with its Minnesota contacts.

4. *Interest of forum state*—Minnesota has an interest in providing a forum for an injured resident.

5. *Convenience*—This factor was felt to be unpersuasive either way.

The *Aftanase* case has been relied upon in several other Eighth Circuit decisions. See Electro-Craft Corp. v. Maxwell Electronics Corp., 417 F.2d 365 (8th Cir. 1969); Thompson v. Ecological Science Corp., 421 F.2d 467 (8th Cir. 1970); Gardner Engineering Corp. v. Page Engineering Co., 484 F.2d 27 (8th Cir. 1973). This Court also relies upon its analysis in upholding personal service on the defendants in this case.

As to quantity of contacts, the contacts of significance here are (1) the promotional meetings in Fargo, North Dakota, and Minneapolis, Minnesota, which several of the plaintiffs attended and which were conducted by defendants Glen Priest and Warren Starnes, and (2) the fact that check payments, made by South Dakota residents to Prelin and cashed by them, were payable from South Dakota banks. While it is true that some of defendants later held telephone conversations with the South Dakota commissioner for Consumer Affairs in relation to their belated application for registration as a multi-level distributorship, and defendant Starnes was actually in South Dakota for this purpose, we do not consider those contacts relevant to establishing *in personam* jurisdiction, as they occurred after the accrual of plaintiffs' cause of action, that is, after they suffered injury.

It is recognized that Prelin never had any of its officers within the state of South Dakota and that contract negotiations did not take place in South Dakota. Nevertheless, the situation here can be distinguished from that in Kulm v. Idaho First National Bank, 428 F.2d 616 (8th Cir. 1970). The court there held that the investment by a South Dakota plaintiff in Idaho property was not induced by a letter to plaintiff from a bank in Idaho, and that all other negotiations and dealings in the matter took place outside South Dakota, and therefore, there was not sufficient substance to the contacts between the non-resident defendant and South Dakota. In *Kulm*, however, the South Dakota resident was *investing out-of-state in Idaho* property, whereas here, the defendants knew that the plaintiffs' investment was in business they intended to carry on *within* the state of South Dakota and in prod-

ucts they intended to sell in South Dakota. Also, here there can be no doubt that plaintiffs' investments were decidedly induced by defendants' assurances and promises at the promotional meetings, which, although taking place outside the state, were conducted by defendants with the definite knowledge that their products and distributorships would be sold in South Dakota.

This leads directly into the nature and quality of the contacts. This Court finds overwhelmingly significant the nature of the contacts made with South Dakota residents through out-of-state promotional meeings. In their briefs, defendants guilelessly ignore such meetings, but such a stance does not impress the Court. The uncontested affidavit of plaintiff Graber states the following:

at a meeting May 28, 29, 30, 1971, in Minneapolis, Minnesota;

> Affiant specifically asked Defendant Starnes if there would be any similar legal problems involved in registration by the company in South Dakota. Warren Starnes stated that there would be no difficulty in registration in South Dakota for selling distributorships. Warren Starnes also stated that the only obligation of distributors relative to the registration for selling distributorships in South Dakota was to complete the contract.

(The multi-level distribution plans law was not to go into effect until July, 1971, but defendants can certainly be held to legal notice as the law was passed during the 1971 winter legislative session. Also, statements made at later meetings reaffirmed this primary misrepresentation.)

at a meeting June 29, 30 and July 1, 1971, at Minneapolis, Minnesota;

> Again Warren Starnes assured the person (sic) present including this affiant, that as to legality and registration of their marketing plan, they had nothing to worry about as they had the finest lawyers in the country and that if preling (sic) could handle the legal problems in Minnesota, who

(sic) had a similar multi-level distribution law, they could certainly handle the state of South Dakota.

at a meeting August 24, 1971, in Minneapolis, Minnesota, after Graber showed Priest a Sioux Falls newspaper clipping in reference to the multi-level distribution law in the state of South Dakota;

> Glen Priest again reassured this affiant that Prelin Industries, Inc. and its multi-level distribution marketing plan was registered within the state of South Dakota and that they had nothing to worry about concerning it (sic) legality.

at a meeting August 27, 28, 1971, at Fargo, North Dakota;

> Warren Starnes again reassured and advised the affiant and other persons present, that the registration requirements in South Dakota had been taken care of.

On four separate occasions, defendant officers of the defendant corporation acknowledged that the plaintiffs were going to be conducting their business of selling distributorships and Prelin products in the State of South Dakota. Defendants most certainly anticipated that their activities would have consequences in South Dakota. *Aftanase, supra* at 197.

Anticipating such consequences, "A non-resident seller subjects itself to the obligation of amenability to suit in return for the right to compete for sales in the (local) market." *Electro-Craft, supra* at 368. While that case did include telephone and mail negotiations from Minnesota, the local forum, there were such similarities as the fact that the order was mailed from Minnesota, payment was to be through a Minnesota bank, the seller shipped the equipment directly to Minnesota, the defendant never had an officer, employee, or agent in Minnesota, nor did he maintain an office or advertise there, nor was he qualified to do business in Minnesota. Also, there was only one transaction in *Electro-Craft*, whereas here there are several.

In Hamilton National Bank of Chattanooga v. Russell, 261 F.Supp. 145, 149 (E.D.Tenn.1966), a single transaction case where suit was brought by a bank against the makers of a note and pledges of stock certificates, and personal jurisdiction was upheld, the District Court concluded

. . . that a defendant did not perform a physical act within the State of Tennessee is not determinative of his or her lack of "minimum contact", for activities outside the state resulting in consequences within the state may subject those involved in such activities to in personam jurisdiction of the courts of the state. Young v. Masci, [289 U.S. 253, 53 S. Ct. 599, 77 L.Ed. 1158] (1933); Velandra v. Regie Nationale Des Usines Renault, 336 F.2d 292 (6th Cir. 1964).

Defendants here entered into a transaction which they knew would have an impact on the commerce of South Dakota. Indeed, as the record shows by their Certificate of Authority to do business, dated October 6, 1971, and their November 6, 1971, application for registration as a multi-level distributorship, defendants would like to have had an even greater and continuing impact on South Dakota commerce. By entering into such a transaction, defendants invoked the benefits and protection of South Dakota laws and could reasonably have anticipated that their acts would have consequences in South Dakota. The absence of any defendants physically in South Dakota does not control. *Electro-Craft, supra* at 369.

As added fuel to the fire, the fact that Prelin cashed the checks made payable to them by plaintiffs serves to satisfy the "minimum contacts" requirement of Hanson v. Denckla, in which the Court stated:

It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

Hanson v. Denckla, *supra* at 253, 78 S.Ct. at 1240.

Can it be doubted that if the defendants had not received proper payment for the Prelin products, they would not have hesitated to bring suit in South Dakota? Surely, it cannot, and defendants must not be heard to complain when they reap the full harvest of process as well as profits. Southern Machine Company v. Mohasco Industries Inc., 401 F. 2d 374 (6th Cir. 1968).

■ The source and connection between the cause of action and defendants' contacts with South Dakota has been adequately shown. The interest of the forum in this case is unquestionable. The South Dakota legislature showed such interest when it passed strict laws concerning multi-level distribution plans, and, of course, when it enacted the "long-arm" statute. See S.D.C.L. 37–25 and 15–7–2. The criteria of convenience, while a minor consideration, is also met here. Defendants should not, in good faith, claim inconvenience when they were willing to take advantage of South Dakota's market-place and made a profit from their sales there. Additionally, if defendants could afford to travel to various states for promotional meetings, they should be able to do so to defend suits brought against them.

■ The final issue to be resolved is that of "piercing the corporate veil" so that personal service over the defendants individually as directors and officers of Prelin Industries, Inc., can be upheld. By disregarding corporateness and determining the directors and officers to have personally committed those acts of the corporation considered fraudulent, the following public policy test has been applied:

The test is simply whether or not recognition of corporateness would produce unjust or undesirable consequences inconsistent with the purpose of the concept. Henn, LAW OF CORPORATIONS, 2d ed. (1970), p. 252.

And, as recognized in *United States v. Milwaukee Refrigerator Transit Co.*, 142 F. 247, 255 (C.C.E.D.Wis.1905),

> . . . when the notion of ·legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons . . . cited by Henn at 252.

If any question be raised on the applicability of the "long-arm" statute to individuals, the South Dakota Supreme Court has answered it in *Ventling v. Kraft, supra,* by refusing to make any distinction between corporations and individuals.

It should be pointed out that corporateness is being disregarded for the purpose of obtaining *personal jurisdiction,* not for establishing liability, as the officers would be subject to liability under S.D.C.L. 37–25–3, 37–25–22, 37–25–25, *supra* at footnote 1. This Court is holding that the "long-arm" statute (S.D.C.L. 15–7–2) applies to Prelin's officers by their "doing personally" "(2) The commission of any act which results in accrual within this state of a tort action". The acts, which have already been discussed, include the misrepresentations made to plaintiffs at promotional meetings, the cashing of plaintiffs' checks (both of which establish "minimum contacts") and the act of omission of failure to apply for registration in conformance with South Dakota laws.

A case which most closely approaches the present fact situation is *Myers v. United States Automobile Club, Inc.*, 281 F.Supp. 48 (E.D.Tenn.1968), an action brought by a purchaser of a Tennessee franchise of an automobile club against the club and its directors individually for damages based on alleged misrepresentations made to the plaintiff in relation to the franchise. Although there was no discussion about disregarding corporateness, the District Court upheld personal service, concluding that defendants' activities with the state of Tennessee subjected them to jurisdiction under the Tennessee "long-arm" statute.

The affidavits of two of the defendants in *Myers* are parallel to affidavits of defendants here. There, defendant Banks made the contradictory statement that he was not a Director of the Club but was employed by it as its Director of Competition, without defining "Director of Competition". *Myers, supra* at 51. Similarly, defendant Denton in his affidavit states:

> I am an Assistant Secretary of Prelin, a co-defendant ·in this lawsuit. I am not now, nor have I ever served in any other capacity with Prelin except as an attorney . . .

Again defendant Banks in *Myers* stated:

> . . . at no time has he participated in any way or capacity in the management or direction of any affairs or in the transaction of any business for or on behalf of the corporate defendant in Tennessee or elsewhere with the plaintiff, as an officer thereof or otherwise. He further states that he never held any individual conference with plaintiff in Tennessee or elsewhere or represented any matter affecting the plaintiff in pub⁝lications or otherwise . . . *Myers, supra* at 51.

And defendant Denton contends:

> I have never entered into any business negotiation, contract or arrangement with any resident of South Dakota either in or outside of the State of South Dakota. I have never conducted a transaction, negotiation or discussion with any citizen of South Dakota in my capacity as Assistant Secretary of Prelin Industries, Inc. (hereinafter called "Prelin") or otherwise.

Even accepting the affidavits as true, Chief Judge Taylor found them as unconvincing in *Myers, supra* at p. 52, as I do here on the issue of amenability to service. For, even though only defendants Starnes and Priest were placed at promotional meetings of Prelin, defendants Brady, Hudson, and Denton, as active officers or directors (indicated by the Certificate of Authority application,

the Articles of Incorporation, and the application for registration as a multi-level distributorship) must be assumed to have sanctioned such activities, and to have been aware that the corporation had not complied with South Dakota law. As officers and directors, they would also have willingly participated in the sums of money received from plaintiffs as checks cashed by Prelin Industries.

The motions to quash summonses and dismiss the case by defendants Warren J. Starnes, Lester Brady, Roy Hudson, a/k/a Burford R. Hudson, Glen R. Priest and Michael G. Denton are hereby denied. This Court wants to emphasize that throughout this opinion, the Court has taken the facts in the complaint and affidavits as true and from those facts has drawn reasonable inferences on the issue of personal jurisdiction. The Court makes no determination and expresses no view as to the probable outcome of the case in a trial on the merits. See Southern Machine Co., *supra* at 386.