**STATE of Iowa ex rel. Thomas J. MILLER, Attorney General of Iowa, Appellant,**

v.

**INTERNAL ENERGY MANAGEMENT CORPORATION, Carl Wolff, and Carlos R. Sotelo, Appellees.**

No. 66390.

Supreme Court of Iowa.

Sept. 29, 1982.

Douglas R. Carlson, Asst. Atty. Gen., for appellant.

Nick Critelli of Critelli & Foxhoven, Des Moines, and Thomas J. McCann, Student Legal Intern, for appellees.

Considered by REYNOLDSON, C. J., and LeGRAND, UHLENHOPP, McGIVERIN, and CARTER, JJ.

UHLENHOPP, Justice.

The question in this appeal is whether Iowa courts can exercise personal jurisdiction over a nonresident corporate agent in his individual capacity on the basis of his activities undertaken on behalf of a foreign corporation which itself is amenable to suit under the long-arm statute. Iowa Code § 617.3 (1979).

On February 27, 1980, the Attorney General commenced this consumer fraud action in equity alleging the following facts. *See* Iowa Code § 714.16(7) (1979) (Consumer Fraud Act). Defendants Carl Wolff and Carlos R. Sotelo are the directors and officers of defendant Internal Energy Management Corp. (IEM), a business incorporated in Texas. IEM manufactures and merchandises on a national scale an alleged fuel-saving device known as the "moleculetor fuel energizer unit" (moleculetor). The moleculetor is designed to be installed in the fuel supply line of a motor vehicle and consists simply of a ten-inch long solid aluminum cylinder with a hole drilled through the center. It has no moving parts and contains no wires, filters, or material other than aluminum.

IEM claims that installation of the moleculetor will increase fuel mileage from 14 to 32 percent and explains the principle of operation as follows:

> The moleculetor T. M. fuel energizer unit has a force field of energy that increases the motion of fuel molecules. Fuel molecules in their normal state are held together by forces. When passing through the moleculetor T. M. energizer the motion of fuel molecules are increased, causing a reduction of the forces holding them together. In this state during the combustion process the molecules burn more completely. This can be seen very easily in the lower emissions which is unburnt and unburnable particles of fuel, e.g. hydro-carbons, carbon monoxide, etc.

To advertise the moleculetor, IEM produced several brochures containing representations of increased fuel mileage and explaining the operation of the moleculetor.

IEM also produced several technical reports and a number of alleged user testimonials to support its claim of increased fuel efficiency. These materials were circulated throughout a network of regional distributorships set up by IEM. One such distributorship was established in Omaha, Nebraska, under the name of Midwest Moleculetor Sales (Midwest).

In July 1979, an investigator for the Attorney General's consumer protection division contacted Midwest and ordered by mail one moleculetor unit at a price of $89.95. Upon receiving the moleculetor, the investigator sent it to the Department of Mechanical Engineering at Iowa State University for testing its validity. The engineers at the department concluded that "the moleculetor is utterly incapable of increasing the fuel economy of the gasoline or diesel engine."

On the basis of the test results, the Attorney General commenced the present action in the Iowa District Court against defendants IEM, Wolff, and Sotelo, alleging that they had engaged in false and misleading advertising in their efforts to merchandise the moleculetor in the state of Iowa. The Attorney General asked that defendants be permanently enjoined from the use of any deceptive advertising practices in connection with their sales of the moleculetor, that the court consider entry of a permanent injunction prohibiting defendants from doing any business whatsoever in the state, and that defendants be ordered to reimburse any person who was defrauded through the purchase of a moleculetor. Jurisdiction was predicated on the long-arm statute and on the allegation that defendants had committed a tort within the state through use of deceptive and misleading sales practices. *See* Iowa Code § 617.3 (1979).

The action originally included eight additional defendants who were also involved in manufacturing, distributing, or selling the moleculetor. The proceedings against those defendants have been completed, either by dismissal or by entry of a permanent injunction enjoining them from further sales activities of the moleculetor.

IEM, Wolff, and Sotelo filed special appearances, supported by affidavit, challenging the jurisdiction of Iowa courts over them. *See* Iowa R.Civ.P. 66. The district court overruled IEM's special appearance, finding that the corporation had established sufficient minimum contacts with Iowa through its sales activities conducted within the state. IEM did not appeal from that ruling.

Wolff and Sotelo, on the other hand, based their jurisdictional challenge on the fiduciary shield doctrine which holds that jurisdiction over a corporate agent individually cannot be based solely on jurisdiction over the corporate employer. Both defendants executed affidavits stating that neither had ever visited Iowa or transacted business here, either for personal reasons or on behalf of IEM. They asserted that the only basis alleged in the petition for asserting jurisdiction over them was that they were officers and directors of IEM. They argued that under the fiduciary shield doctrine, those allegations were insufficient to confer jurisdiction over them. The district court sustained their special appearance ruling that (1) neither of those defendants had engaged in activities in the state in their individual capacity that would satisfy the minimum contacts test, and (2) the Attorney General failed to allege sufficient facts to permit the court to disregard the "fiduciary shield" of the corporation and obtain personal jurisdiction over defendants for their activities undertaken on behalf of IEM.

The State appealed from sustension of the special appearances of Wolff and Sotelo. Since the order did not dispose of the claim against IEM and could not be considered a final adjudication, we treated the appeal as an application for interlocutory review, Iowa R.App.P. 1(*c*), and granted it.

■ I. *Procedural principles.* In appeals from rulings on special appearances, we accept as true the allegations of the petition and the contents of uncontroverted affidavits. *E & M Machine Tool Corp. v. Continental Machine Products, Inc.,* 316

N.W.2d 900, 904 (Iowa 1982); *Svendsen v. Questor Corp.,* 304 N.W.2d 428, 429 (Iowa 1981); *Hovey v. Elson,* 303 N.W.2d 132, 135 (Iowa 1981); *Creative Communication Consultants, Inc. v. Byers Transportation Co., Inc.,* 229 N.W.2d 266, 268 (Iowa 1975). The plaintiff has the burden to sustain the requisite jurisdiction, but when he establishes a prima facie case the defendant has the burden of producing evidence to rebut that showing. *Larsen v. Scholl,* 296 N.W.2d 785, 787 (Iowa 1980); *Berkley International Co. v. Devine,* 289 N.W.2d 600, 602 (Iowa 1980); *Kagin's Numismatic Auctions, Inc. v. Criswell,* 284 N.W.2d 224, 225 (Iowa 1979). The trial court's findings of fact have the effect of a jury verdict and are subject to challenge only if not supported by substantial evidence in the record; we are not bound, however, by the trial court's application of legal principles or its conclusions of law. *Svendsen,* 304 N.W.2d at 429; *Hovey,* 303 N.W.2d at 135; *Larsen,* 296 N.W.2d at 787; *Berkley International,* 289 N.W.2d at 602.

In *Larsen* we adopted a two-step test for analyzing the validity of a special appearance: (1) does a statute or rule authorize the exercise of jurisdiction? (2) does the exercise of jurisdiction offend the due process principles embodied in the United States Constitution? 296 N.W.2d at 787. *See Svendsen,* 304 N.W.2d at 429–30.

II. *Long-arm statute.* The Attorney General relies on section 617.3 of the Iowa Code to satisfy the first step of the *Larsen* test requiring that the exercise of jurisdiction be authorized by rule or statute. That section provides in relevant part:

> If a nonresident person makes a contract with a resident of Iowa to be performed in whole or in part by either party in Iowa, *or if such person commits a tort in whole or in part in Iowa against a resident of Iowa,* such acts shall be deemed to be doing business in Iowa by such person for the purpose of service of process of original notice on such person under this section, and shall be deemed to constitute the appointment of the secretary of state of the state of Iowa to be the true and lawful attorney of such person upon whom may be served all lawful process or original notice in actions or proceedings arising from or growing out of such contract or tort.

Iowa Code § 617.3 (1979) (emphasis added).

In his petition the Attorney General alleges that Wolff and Sotelo employed deceptive and misleading advertising in an attempt to sell moleculetors to Iowa residents. He also alleges that Iowa residents relied on that advertising in purchasing several of the devices. Based on those contentions he alleges that defendants have committed a tort against Iowa residents. *See* Iowa Code § 714.16 (1979). Under the rule that we accept the allegations of the petition as true, we conclude that the Attorney General has carried his burden of showing that the exercise of jurisdiction over Wolff and Sotelo is authorized by the long-arm statute. *See E & M Machine Tool,* 316 N.W.2d at 904 (allegations of false advertising in Iowa and misrepresentations in telephone calls to state are sufficient to show alleged tort for purposes of long-arm statute).

III. *Due process—the fiduciary shield doctrine.* Turning to the second step of the *Larsen* test, we inquire whether the exercise of jurisdiction over Wolff and Sotelo would "offend traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490, 498 (1980), quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 104 (1945).

A. Initially we observe that the parties disagree as to the application of the fiduciary shield doctrine. Some courts hold that it is a rule of construction for interpreting the intended scope of a state's long-arm statute. *See Marine Midland Bank, N. A. v. Miller,* 664 F.2d 899, 902 n.3 (2nd Cir. 1981) ("The fiduciary shield doctrine is not a constitutional principle, but is rather a doctrine based on judicial inference as to the intended scope of the long-arm statute."); *United States v. Montreal Trust Co.,* 358 F.2d 239, 242 (2nd Cir.), *cert. denied,* 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440

(1966). Under that view the doctrine would be applied under the first step of the *Larsen* test to determine whether the exercise of jurisdiction was authorized by the long-arm statute. On the other hand, several courts have held that the doctrine is a constitutional principle, applied to determine whether the exercise of jurisdiction comports with fair play and substantial justice. *See Lehigh Valley Industries, Inc. v. Birenbaum,* 527 F.2d 87, 92–93 (2nd Cir. 1975); *Weller v. Cromwell Oil Co.,* 504 F.2d 927, 929 (6th Cir. 1974); *Sharp Electronics Corp. v. Hayman Cash Register Co.,* (D.N.J.1982) ("The fiduciary shield doctrine has been construed to place due process limits on the exercise of in personam jurisdiction. . . ."); *Bulova Watch Co. v. K. Hattori & Co.,* 508 F.Supp. 1322, 1348 (E.D.N.Y.1981); *Hurletron Whittier Inc. v. Barda,* 82 Ill.App.3d 443, 446, 37 Ill.Dec. 838, 402 N.E.2d 840, 842 (1980). We find the latter view persuasive and will therefore apply the doctrine as a due process limitation on the exercise of jurisdiction. *See State Security Insurance Co. v. Frank B. Hall & Co.,* 530 F.Supp. 94, 98 (N.D.Ill.1981) (reaching same conclusion after discussing split in authority).

B. Traditionally we have applied the due process prong of the *Larsen* test by looking to five factors designed to determine whether the requisite minimum contacts have been established. 296 N.W.2d at 788. *See Svendsen,* 304 N.W.2d at 430; *Berkley,* 289 N.W.2d at 603; *Kagin's,* 284 N.W.2d at 228–29; *Douglas Machine & Engineering Co., Inc. v. Hyflow Blanking Press Corp.,* 229 N.W.2d 784, 789 (Iowa 1975). In the present case, however, we find that analysis unnecessary. The district court determined, on the basis of the five factor test, that IEM is subject to the jurisdiction of Iowa courts. No appeal from that ruling was taken. For purposes of the present appeal we assume the court was correct in finding the requisite minimum contacts to permit Iowa courts to exercise jurisdiction over IEM. The question concerning the exercise of jurisdiction over Wolff and Sotelo is whether the minimum contacts established by IEM *can be attributed to them* on an individual basis. This appeal thus turns on whether the fiduciary shield doctrine is applicable to insulate defendants from the jurisdiction that Iowa courts have obtained over their corporate employer. *See Barrett v. Bryant,* 290 N.W.2d 917, 921 (Iowa 1980) (discussing doctrine but finding it inapplicable under the facts); *DeCook v. Environmental Security Corporation, Inc.,* 258 N.W.2d 721, 727 (Iowa 1977) (same).

C. A distinction must first be drawn between principles determining the personal liability of corporate agents for torts committed while acting on behalf of the corporation and principles determining the amenability of such agents to jurisdiction on the basis of those acts. *See generally* Sponsler, *Jurisdiction Over the Corporate Agent: The Fiduciary Shield,* 35 Wash. & Lee L.Rev. 349, 350–51 (1978). An individual who commits a tort while acting in his capacity as a corporate agent may be held personally liable. *State ex rel. Maley v. Civic Action Committee,* 238 Iowa 851, 859, 28 N.W.2d 467, 471 (1947); *see* 19 Am. Jur.2d *Corporations* § 1382 (1965); 19 C.J.S. *Corporations* § 845 (1940). Whether those same acts will permit a court to exercise personal jurisdiction over the agent individually is a separate question governed by the fiduciary shield doctrine.

■ Under the fiduciary shield doctrine, generally a nonresident corporate agent is not individually subject to a court's jurisdiction on the basis of jurisdiction of the corporation itself. *See e.g., Escude Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d 902, 906 (1st Cir. 1980); *Lehigh Valley Industries,* 527 F.2d at 92–93; *Weller,* 504 F.2d at 929; *Bulova Watch Co.,* 508 F.Supp. at 1347; *Stop-A-Flat Corp. v. Electra Start of Michigan, Inc.,* 507 F.Supp. 647, 651 (E.D. Pa.1981); *Warren v. Dynamics Health Equipment Mfg. Co., Inc.,* 483 F.Supp. 788, 791–93 (M.D.Tenn.1980); *Idaho Potato Commission v. Washington Potato Commission,* 410 F.Supp. 171, 180–81 (D.Idaho 1975); *Holfield v. Power Chemical Co., Inc.,* 382 F.Supp. 388, 393–94 (D.Md.1974). *See also* 4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1069 (Supp.1981) ("It

appears that the corporation will ordinarily insulate the individuals from the court's personal jurisdiction. Thus jurisdiction over individual officers and employees of a corporation may not be predicated on the court's jurisdiction over the corporation itself . . . ."); 3A Fletcher, *Cyclopedia of Corporations* § 1296.1, at 496 (rev. ed. 1974).

An extensive analysis of the doctrine appears in *Marine Midland Bank, N. A. v. Miller,* 664 F.2d 899, 902 (2nd Cir. 1981) (footnote omitted):

> [Courts applying the fiduciary shield doctrine] have recognized that if an individual has contact with a particular state only by virtue of his acts as a fiduciary of the corporation, he may be shielded from the exercise, by that state, of jurisdiction over him personally on the basis of that conduct. Thus, his conduct, although it may subject him to personal liability, may not form the predicate for the exercise of jurisdiction over him as an individual. The underpinning of this fiduciary shield doctrine is the notion that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer.

An exception exists to the doctrine protecting the agent where the corporation itself is not a viable entity and the acts of the corporate agent are actually taken in a personal capacity. In such cases courts will, for purposes of personal jurisdiction over the agent on an individual basis, pierce the corporate veil and attribute those acts to him rather than to the corporate entity. *See Marine Midland,* 664 F.2d at 903; *Bulova Watch,* 508 F.Supp. at 1348; *Holfield,* 382 F.Supp. at 393–94; 4 Wright and Miller, *supra,* at 51–52 (Supp.1981) ("However, if the corporation is not a viable one and the individuals are in fact conducting personal activities and using the corporate form as a shield, a court may feel compelled to pierce the corporate veil and permit assertion of personal jurisdiction over the individuals."); Sponsler, *supra,* at 359–60. The question in the present case is whether

the Attorney General's allegations are sufficient to warrant our disregarding the fiduciary shield which would otherwise insulate Wolff and Sotelo from the jurisdiction of the Iowa courts.

■ To determine whether the acts of IEM could be attributed to Wolff and Sotelo, the trial court applied the test outlined by the United States Court of Appeals for the Eighth Circuit in *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Management, Inc.,* 519 F.2d 634, 638 (8th Cir. 1975). That test was designed to determine when the corporate veil should be pierced for purposes of substantive liability and requires an analysis of whether the corporation (1) is undercapitalized, (2) is without separate books, (3) has commingled personal and corporate assets, (4) is used to promote fraud or illegality, (5) fails to follow corporate formalities, and (6) is merely a sham. *See Northwestern National Bank of Sioux City v. Metro Center, Inc.,* 303 N.W.2d 395, 398 (Iowa 1981); *Briggs Transportation Co., Inc. v. Starr Sales Co., Inc.,* 262 N.W.2d 805, 810 (Iowa 1978). After reviewing the petition the district court found that the only basis offered for piercing the corporate veil was the allegation that IEM was being used to promote fraud and illegality. It noted the absence of any allegation that the corporation was the alter ego of Wolff and Sotelo or that it was a mere shell for their personal business. The court concluded that the allegation of fraud standing alone was insufficient to disregard the fiduciary shield. The court held additional allegations that the corporation was merely a shell for personal business of Wolff and Sotelo were necessary before the corporate entity could be disregarded.

If we read only certain parts of the petition, we would find it inadequate to confer jurisdiction. But we consider the whole petition as amended. This brings into play other allegations, of which these are illustrative:

> 40. That the defendants herein [which would include Wolff and Sotelo] have acted together, jointly and in concert, to further the business aims of the various

businesses in connection with advertising, soliciting and making sales of their products, including the so-called moleculator device, in and to residents of the State of Iowa and the District Court of Polk County, Iowa has jurisdiction over all of said defendants and their advertising, solicitation and sales activities.

. . . .

45. According to one of the theories articulated by the defendants the reason their moleculator device can save up to forty percent on fuel mileage is that it has allegedly been blasted by a lazar beam which creates an energy field inside the device.

46. In truth and in fact, the representations made by the defendants, set forth in paragraph number forty-five, are false, deceptive and misleading. The device has not been blasted by any lazar beam and the device does not contain any force field, magnetic field or any energy field of any kind in any way, shape or form.

. . . .

48. The defendants, in Exhibit A, make the following claim:

"Environmental Protection Agency. Highway fuel economy tests have shown 10 percent to 24 percent increases after installation of the moleculetor."

49. That in truth and in fact, the representations made by the defendants' brochure as set forth in paragraph forty-eight above, are false, deceptive and misleading in that their device has not been tested by the U. S. Environmental Protection Agency nor any state Environmental Protection Agency nor will their device achieve 10 percent to 24 percent increases in highway fuel economy.

50. The defendants in their brochure, Exhibit A attached, also make the following representations for the moleculetor device:

"The moleculator T.M. fuel energizer unit has a force field of energy that increases the motion of fuel molecules.

Fuel molecules in their normal state are held together by their forces.

When passing through the moleculator T.M. energizer the motion of fuel molecules are increased, causing a reduction of the forces holding them together.

In this state during the combustion process the molecules burn more completely. This can be seen very easily in the lower emissions which is unburnt and unburnable particles of fuel, e.g., hydro carbons, carbon monoxide, etc."

51. That in truth and in fact, the representations made by the defendants as set forth in paragraph fifty above are false, deceptive and misleading in that the device does not have the claimed force field, does not increase the motion of fuel molecules, does not energize the motion of fuel molecules, does not cause a reduction of the forces holding them together and does not cause fuel molecules to burn more completely during the combustion process. A more detailed allegation as to why the defendants' representations are false, deceptive and misleading will be set forth by the plaintiff later when referring to the testing process the plaintiff had completed on one of the defendants' moleculator devices.

52. That the defendants, in their brochure, Exhibit A attached, list a number of so-called "actual road test comparisons by users of the moleculator" and list claims from users in Arizona, Nevada, California, Pennsylvania and Texas allegedly claiming increases in mileage from 20.3 percent all the way up to 31.88 percent.

53. That in truth and in fact, the representations made by the defendants as set forth in paragraph fifty-two above are false, deceptive and misleading in that either such tests were not made, the results issued were authorized, names were forged, or the information otherwise is inaccurate, false, deceptive and misleading and the defendants' device will not gain the alleged fuel savings claimed in such fraudulent alleged user testimonials.

. . . .

89. That because of the illegal, false, deceptive and misleading representations, practices and promises of the defendants, as set forth in this petition, the plaintiff prays that the court temporarily and permanently enjoin the defendants from the continuation of said illegal, false, deceptive and misleading sales practices.

90. That because of the defendants' false, deceptive and misleading sales practices, as set forth in this petition, the plaintiff also prays that the court order the defendants to restore all monies obtained from any residents of the State of Iowa by the use of such practices as the court finds to be illegal herein in violation of Section 714.16, 1979 Code of Iowa, commonly known as the *Iowa Consumer Fraud Act.*

We conclude that the test applied by the trial court was overly stringent for *jurisdictional purposes* and that under the proper standard the fiduciary shield can be penetrated to subject Wolff and Sotelo to the jurisdiction of Iowa courts. In *Marine Midland Bank* the Court of Appeals faced a similar situation in which a federal district court refused to disregard the fiduciary shield for purposes of jurisdiction after applying the test traditionally used to pierce the corporate veil for purposes of substantive liability. In that case the petition contained allegations that the corporation was merely a shell entity but no allegations that it was used to perpetrate a fraud. Concerning the appropriate standard to be employed when testing claims of jurisdiction the court stated:

In deciding whether the corporation is a real or a shell entity, *the appropriate standard should not be the very stringent test, normally applied in other contexts, for piercing the corporate veil.* That test requires a showing not only that the corporation is a shell, but that it was used to commit a fraud. *Walkovszky v. Carlton,* 18 N.Y.2d 414, 276 N.Y.S.2d 585, 223 N.E.2d 6 (1966). When both of these showings are made the corporate entity is disregarded, and the individuals behind the corporate shell are held responsible for its liabilities. The fiduciary shield

doctrine, however, is not concerned with liability. It is concerned with jurisdiction, and specifically with the fairness of asserting jurisdiction over a person who is acting solely in the interests of another. In determining whether a corporation for which an owner-employee acts is really "another," it is sufficient to inquire whether the corporation is a real or shell entity. If the corporation is merely a shell, it is equitable, even if the shell may not have been used to perpetrate a fraud, to subject its owner personally to the court's jurisdiction to defend the acts he has done on behalf of his shell.

664 F.2d at 903 (emphasis added). The court went on to conclude that the district court had applied the wrong standard and reversed the judgment on that basis:

In the present case, in assessing Marine Midland's assertion that Miller & Associates was a mere shell for Miller, and that Miller's actions, while ostensibly taken in his corporate role, were in fact his own, *the district court erred in applying the strict test used by New York in determining whether or not to pierce the corporate veil for purposes of liability.* In deciding the limited question of whether it had jurisdiction the court should have looked only to the question whether Miller & Associates was a shell for Miller; it should not have required a showing that the shell was used to commit a fraud.

Given this less onerous standard, Miller's motion should not have been granted on the basis of the record as it stood before the district court.

*Id.* at 904 (emphasis added).

The instant case presents the opposite situation—a request to disregard the fiduciary shield where allegations of fraud appear, but no allegations are made that the corporation itself is not a viable entity. The question thus becomes whether the Attorney General's allegations of fraud are sufficient in themselves under the less stringent test to disregard IEM's corporate existence and attribute its minimum contacts with Iowa to Wolff and Sotelo on an individual basis.

The rule generally stated is that fraud constitutes a sufficient basis for piercing the corporate veil for purposes of substantive liability. 1 W. Fletcher, *Cyclopedia for Corporations* § 44, at 238 (rev. ed. 1974) ("In cases of fraud, whether actual or constructive, the courts regard the real parties responsible, granting relief against them or denying their claims and defenses because of it; *and this is especially true in equity.*" (Emphasis added.)); 6 E. Hayes, *Iowa Practice: Corporation Law and Practice* § 785 (1969) ("The corporate veil may be disregarded when it is being used to perpetrate a fraud."); 18 Am.Jur.2d *Corporations* § 15 (1970) ("Where a corporation is formed to accomplish a fraud or other illegal act, the fiction will be disregarded by the courts, and the acts of the real parties dealt with as though no corporation had been formed. . . ."); 18 C.J.S. *Corporations* § 7b (1939).

A federal district court confronted a situation remarkably similar to the present case in *Graber v. Prelin Industries, Inc.*, 368 F.Supp. 1358 (D.S.D.1974). *Graber* involved a diversity action by several South Dakota residents against an Oklahoma corporation and its officers and directors to recover damages based on alleged misrepresentations made by defendants in their scheme to sell distributorships to the plaintiffs. Notice was served on the corporate and individual defendants in accordance with South Dakota's long-arm statute. The defendants moved to dismiss the action for lack of personal jurisdiction. The individual defendants relied on the fiduciary shield doctrine to insulate them from the court's jurisdiction. The plaintiffs, on the other hand, argued that the allegations of fraud were sufficient to disregard the corporate entity. The opinion does not indicate the plaintiffs alleged the corporation was the alter ego of the individual defendants or that it was a mere shell for the conduct of their personal business. In resolving the jurisdictional dispute the court stated:

> The final issue to be resolved is that of "piercing the corporate veil" so that personal service over the defendants individually as directors and officers of Prelin Industries, Inc. can be upheld. *By disregarding corporateness and determining the directors and officers to have personally committed those acts of the corporation considered fraudulent, the following public policy test has been applied:*
>
> > The test is simply whether or not recognition of corporateness would produce unjust or undesirable consequences inconsistent with the purpose of the concept. Henn, Law of Corporations, 2d ed. (1970), p. 252.
>
> And, as recognized in *United States v. Milwaukee Refrigerator Transit Co.*, 142 F. 247, 255 (C.C.E.C.Wis.1905):
>
> > . . . when the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons . . .
> >
> > cited by Henn at 252.

*Id.* 368 F.Supp. at 1364–65 (emphasis added). Applying that test the court held the allegations of fraud were sufficient to disregard the fiduciary shield and to attribute its activities within the state to the individual directors and officers for purposes of obtaining jurisdiction over them. *Id.* at 1366. *See also Dare To Be Great, Inc. v. Commonwealth ex rel. Hancock*, 511 S.W.2d 224, 227 (Ky.1974) (piercing corporate veil to obtain jurisdiction over principal shareholder predominantly on allegation that corporation was used to promote fraud); 1 Fletcher, *supra* § 44, at 64 (Supp.1981) ("the corporate veil will be pierced in instances [of fraud] where it is necessary to obtain jurisdiction as well as in the cases of liability").

Wolff and Sotelo did not personally perform any acts in Iowa, according to their affidavits. That same situation existed in *Myers v. United States Automobile Club, Inc.*, 281 F.Supp. 48 (E.D.Tenn.1968), and in *Graber*. Notwithstanding, the courts in both instances upheld jurisdiction based on fraud. In *Graber* the court discussed the South Dakota misrepresentations of the corporation, Prelin Industries, and then stated that the absent officers and directors "must be assumed to have sanctioned such

activities...." The court added, "As officers and directors they would have willingly participated in the sums of money received from plaintiffs as checks cashed by Prelin Industries." *Graber,* 368 F.Supp. at 1366.

We conclude that under the less onerous test advocated in *Marine Midland Bank,* allegations of fraud standing alone are sufficient to permit a disregard of the corporate entity for jurisdictional purposes. The petition contains numerous such allegations which we accept as true in this proceeding. We therefore hold that the Attorney General's petition contained sufficient allegations to pierce the corporate cloak and to attribute the minimum contacts of IEM to the individual defendants Wolff and Sotelo. Under the allegations in this case and for jurisdictional purposes, we treat Wolff and Sotelo as though they had sent their individual agent into Iowa to do business. To hold otherwise would mean that an individual contemplating the commission of fraud in other jurisdictions could escape·jurisdiction there by simply committing the fraud through a corporation.

REVERSED.