**MIDWEST RECOVERY SERVICES, Appellant,**

v.

**Helen WOLFE, Appellee.**

**No. 89–1656.**

Supreme Court of Iowa.

Nov. 21, 1990.

Thomas W. Andrews and Kyle L. Jennings of Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, for appellant.

Gregory L. Kenyon of Stamatelos, Kenyon & McCandless, P.C., West Des Moines, for appellee.

Thomas J. Miller, Atty. Gen., Richard C. Cleland and Peter R. Kochenburger, Asst.

Attys. Gen., for amicus curiae State of Iowa.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

This appeal concerns the scope of the Iowa Debt Collection Practices Act (the Act). *See generally* Iowa Code §§ 537.-7101–.7103 (1987). Appellant, Midwest Recovery Services (Midwest), challenges the district court's order finding Midwest liable for numerous violations of the Act, claiming the Act does not apply to the collection of checks originally negotiated for cash.

This appeal originated as two separate small claims actions filed in Polk County by Midwest, an Iowa corporation, in early March, 1988. Both actions sought treble damages under Iowa Code section 554.3806 (1987), for four dishonored checks written by the appellee, Helen Wolfe (Wolfe). Wolfe filed an answer and counterclaim in each of the actions, alleging that Midwest had violated several provisions of the Act in attempting to collect on the dishonored checks. These actions were consolidated into one action and removed to the district court for trial.

Midwest's claim concerned the following checks, in the stated amounts, written against Wolfe's account at the EDCO Credit Union:

| Check No. | Amount |
|-----------|--------|
| 574 | $40.00 |
| 577 | $69.00 |
| 578 | $30.00 |
| 580 | $35.00 |

Midwest's claim on check no. 574 is for $170, claiming treble damages under Iowa Code section 554.3806, plus a $10 surcharge. Midwest's claims on the remaining three checks are similarly calculated.

At trial, the court found that all four checks were negotiated for cash by Wolfe at the courtesy counter at Tait's Super Valu, a Des Moines supermarket. The court also found that proper notice was posted and demand made pursuant to Iowa Code section 554.3806 and awarded Mid-

west treble damages under the statute, entering judgment against Wolfe for $696. However, the court further found that the behavior of Midwest was in violation of Iowa Code section 537.7103. The court cited testimony regarding threats of criminal prosecution made by Midwest, contact with Wolfe's family members concerning her debts, calls to Wolfe's place of employment, threats by Midwest to garnish her wages and seize her assets, and abusive conduct over the telephone associated with collection attempts. Judgment was entered against Midwest for $1000 in penalties and attorney fees for $3000 pursuant to Iowa Code section 537.5201(8) (1987). Wolfe's judgment was set off against the judgment in favor of Midwest pursuant to Iowa Code section 537.5202 (1987). Midwest's request for a new trial was denied, and Midwest appeals. We reverse.

■ Our scope of review in actions at law is for correction of errors at law. *See* Iowa R.App.P. 4; *see also City of Albia v. Stephens*, 461 N.W.2d 326, 328 (Iowa 1990). Where there is substantial evidence in the record to support the trial court's decision, an appellate court is bound by those findings of fact. *State ex rel. Miller v. Internal Energy Management Corp.*, 324 N.W.2d 707, 710 (Iowa 1982). An appellate court is not bound, however, by the trial court's application of legal principles or its conclusions of law. *Id.* Therefore, this court is bound by the district court's finding that the checks at issue were negotiated for cash. We are not, however, bound by the district court's legal determination that a check negotiated for cash is subject to the Iowa Debt Collection Practices Act.

■ Midwest does not contest the district court's findings that it engaged in a series of illegal debt collection practices in attempting to collect the debts owed by Wolfe. At issue is simply whether the nature of the debts incurred by Wolfe fall within the scope of the Act.

It is undisputed that, in order for Wolfe to take advantage of the remedies available under the Act, she must first establish that

the underlying transactions fall within the scope of the Iowa Consumer Credit Code. *See generally* Iowa Code ch. 537 (1987). Iowa Code section 537.7103 states that "[a] debt collector shall not collect or attempt to collect a debt by means of an illegal threat, coercion or attempt to coerce." Thereafter, prohibited practices are listed. The term "debt" is defined in the Act as:

[A]n actual or alleged obligation arising out of a consumer credit transaction, or a transaction which would have been a consumer credit transaction either if a finance charge was made, if the obligation was not payable in installments, if a lease was for a term of four months or less, or if a lease was of an interest in land. A debt includes a check as defined in section 554.3104 given in a transaction which was a consumer credit sale or in a transaction which would have been a consumer credit sale if credit was granted and if a finance charge was made.

Iowa Code § 537.7102(1) (Supp.1987). Following this language, we have previously held that the Act applies only to those debts which arise out of "consumer credit transactions," subject to the stated exceptions. *State ex rel. Miller v. National Farmers Org.*, 278 N.W.2d 905, 906 (Iowa 1979).

A "consumer credit transaction" includes, insofar as relevant here, a "consumer credit sale." *See* Iowa Code § 537.1301(11) (1987). A "consumer credit sale," with exceptions not applicable here, is defined in the Act as:

[A] sale of goods, services or an interest in land in which all of the following are applicable:

(1) Credit is granted either pursuant to a seller credit card or by a seller who regularly engages as a seller in credit transactions of the same kind.

(2) The buyer is a person other than an organization.

(3) The goods, services or interest in land are purchased primarily for a personal, family or household purpose.

(4) Either the debt is payable in installments or a finance charge is made.

(5) With respect to a sale of goods or services, the amount financed does not exceed twenty-five thousand dollars.

Iowa Code § 537.1301(12)(a) (1987). In this case the controversy is over whether the appellee negotiated these checks for the purchase of goods, services or an interest in land.

Since it is clear that Wolfe was not attempting to purchase an interest in land, our inquiry will focus on whether she was purchasing goods or services.

Wolfe asserts for the first time in her appellate brief that the assessment of a twenty-five cent per check check cashing fee constitutes the purchase of a service as contemplated by the legislature to fall within the scope of Iowa Code section 537.-1301(12)(a). However, because Wolfe first raised this issue on appeal and because there is no evidence in the record to show that a fee was charged for the privilege of cashing these checks, we are precluded from considering the issue. Consequently, there was no purchase of "services" during the negotiation of these checks for cash.

We must also determine whether, during the negotiation of these checks for cash, Wolfe purchased goods. Iowa Code section 537.1301(21) (1987) defines "goods" for purposes of the Act:

a. "Goods" includes, but is not limited to:

(1) "Goods" as described in section 554.2105, subsection 1.

(2) Goods not in existence at the time the transaction is entered into.

(3) Things in action.

(4) Investment securities.

(5) Mobile homes regardless of whether they are affixed to the land.

(6) Gift certificates.

b. "Goods" excludes money, chattel paper, documents of title, instruments and merchandise certificates other than gift certificates.

It is clear from the exclusions set out in Iowa Code section 537.1301(21)(b) (1987), that money is not a "good." Therefore, under the statute, a check negotiated for cash is not a check negotiated for the

purchase of goods. Consequently, a check negotiated for cash is not a "consumer credit sale" and therefore cannot be a "consumer credit transaction" to which the Act applies.

Both the amicus and the appellee believe that the statutory definitions of "debt" and "consumer credit sale" compel a result in favor of the appellee. These parties also urge the court to liberally construe the Act to promote its objects and assist the parties in obtaining justice, citing Iowa Code section 4.2 (1987) and a host of cases. Although we are appalled by the collection techniques employed by Midwest in this case, we must avoid placing upon statutory language a strained, impractical or absurd construction. *Doe v. Ray*, 251 N.W.2d 496, 501 (Iowa 1977). To ascertain the intent of the legislature we look to what it said, rather than what it should or might have said. *State v. Hesford*, 242 N.W.2d 256, 258 (Iowa 1976).

Looking to what the legislature said, we cannot construe the Act in such a way as to include a check negotiated for cash within its scope. A check written for cash is for the purchase of money, not the purchase of goods. Thus, it is not a consumer credit transaction to which the Iowa Debt Collection Practices Act applies. The judgment for damages and attorney fees against Midwest is reversed. The case is remanded for entry of a corrected judgment.

REVERSED AND REMANDED.